# CHARLESTON.

## John E. Schilling v. H. Koppers Company.

### Submitted April 8, 1919.   Decided April 15, 1919.

1. Master and Servant—*Injury to Servant—Safe Place to Work.*

    It is one of the duties of the master to provide a reasonably safe place within which his servants may perform the work assigned to them, and having provided such place it is likewise his duty to use reasonable care to the end that the same may be kept in such, reasonably safe condition. (p. 743).

2. Same—*Injury to Servant—Safe Place to Work—Assumption of Safety.*

    An employe entering the service of an employer has a right to assume that the employer has performed his duty of providing a reasonably safe place within which the work such servant is called upon to do may be performed, unless notice is brought to him of the failure of the master in this regard. (p. 739).

3. Same—*Injury to Servant—Safe Place to Work—Ways.*

    Where a carpenter is placed at work upon a building, partially constructed, to perform the work of erecting scaffolding in order that the work may be further carried on and he finds a way provided, when he enters upon the work, for passing from one part thereof to another, apparently for the use of the employee engaged thereon, he has a right to assume that such way has been provided by the master for that purpose, and to assume that it is reasonably safe therefor. (p. 739).

4. Same—*Injury to Servant—Safe Place to Work—Questions of Fact.*

    Where such a passage way consists of a plank extending from the top of a concrete wall to the top of a concrete pier about five feet distant therefrom, and the surfaces of such wall and pier upon which the ends of said plank rest are more or less uneven, on account of gravel and stone projecting above the smooth surface of the concrete, which may cause said board to turn with one stepping thereon, it will be a question for the jury whether the master exercised due care in providing such a way. (p. 742).

5. Same—*Injury to Servant—Instructions—Safe Place to Work.*

    In any case where the question is for the jury to determine whether the master has provided a reasonably safe place within which the servant is called upon to perform his duties, it is error to instruct the jury that the duty of the master is to provide a *safe* place therefor. Such an instruction is misleading in that it

imposes upon the master a higher duty than is imposed by law. (p. 743).

6.   SAME—*Safe Place to Work—Extent of Master's Duty.*
The master has performed his duty to provide a reasonably safe place for his servants when he has exercised reasonable care and diligence to provide such place.   (p. 743).

Error to Circuit Court, Brooke County.

Action by John E. Schilling against the H. Koppers Company. Judgment for plaintiff, and defendant brings error.

Reversed and remanded.

*O'Brien & O'Brien,* for plaintiff in error.

*Erskine, Palmer & Curl,* for defendant in error.

RITZ, JUDGE:

The defendant company was engaged in the erection of a large plant for the La Belle Iron Works Company near the city of Wellsburg in the county of Brooke.   The work had so far progressed that the concrete foundation was completed, and certain of the structural steel work had been placed thereon.   Plaintiff is a carpenter, and at the time of his injury was employed by the defendant to assist in constructing certain scaffolding to be used in connection with the further erection of the building.   It appears that the foundation consisted of a concrete wall extending along the side of the proposed building next to the river, which wall was between twenty and twenty-five feet in height.   About four and one-half to five feet from this wall, within what would be the interior of the building when completed, were certain concrete piers of about the same height as the wall.   The superstructure of steel and other materials was to be placed upon this wall and these piers.   As before stated, certain of the steel work had been erected, and in order to further carry on the construction it was necessary to erect certain hanging scaffolds fixed to the steel work then in place, and the plaintiff with other carpenters was sent to the building for the purpose of putting in place these hanging scaffolds. They were to be constructed of boards suspended by ropes attached to the structural steel.   The evidence shows that

the material from which these scaffolds were to be made was procured at various points about the building, it appearing that the men were expected to get it wherever they could find it on the work. Just prior to the time the plaintiff received the injury of which he complains, in the prosecution of the work in which he was engaged, he required a board some ten feet long, and also a rope. He was at that time at work upon the wall above referred to. He noticed on one of the piers above referred to such a board and rope as he needed. From the wall upon which he was working to the pier upon which this board and rope were there extended a plank six inches wide and two inches thick bridging the intermediate space, which was about five feet. It appears that this plank had been placed there by someone engaged in work upon the building sometime before the plaintiff and the men with whom he was working were put to work there. It is shown that it lay across this space between the pier and the wall, apparently having been placed there for the purpose of crossing from the one to the other. The plaintiff, for the purpose of procuring the plank and rope which he needed, and which were upon the pier, crossed from the wall to the pier over this board. He states that when he went over to the pier from the wall he experienced no difficulty. He also states that he never had crossed this space before, but that it was used by the other men working on the building for that purpose. The plaintiff secured the rope desired and threw it across the intervening space to one of his fellow workmen. He then picked up the plank and started to return to the wall where he needed it, and he says that when he took one step upon the board it turned upon the edge with him, and he fell to the ground below, a distance of more than twenty feet, suffering very severe permanent injuries. Upon the trial of the case in the court below a verdict was returned in his favor, upon which judgment was rendered, to review which this writ of error is prosecuted.

The defendant's principal contention is that under the facts there can be no recovery, and that the trial court should have directed the jury to return a verdict in its favor. It contends that the evidence does not make out a case showing

any breach of its duty toward the plaintiff, the argument being that the plaintiff was put to work in what was necessarily a dangerous place; that the work in which he was engaged was a work of preparing a place for others, and that the master owed him no duty to see that the instrumentalities with which he was to perform his duty were reasonably safe; that it was the plaintiff's duty to see to this at his peril; and further, it is argued that even assuming that it was the duty of the master to see that the board in question was reasonably safe for the purpose for which it was apparently intended, the evidence does not show that such was not the case, but rather tends to show that the accident was one of those unfortunate occurrences which result, not from the negligence or default of anyone, but from the inherent dangers attending the employment. If it is true, as urged by the defendant, that it was the plaintiff's duty to see that the instrumentalities with which he was working were safe, and no duty devolved upon the defendant in this regard, then of course there can be no recovery. But is that the case here? It is true the plaintiff was engaged in erecting scaffolds to be used for the further construction of the building, and so far as there might have been danger to him from the work that he was doing, or from the insufficiency of the material selected by himself in the work in which he was actually engagged, of course the master would not be in any wise responsible, but it must be borne in mind that when the plaintiff and his fellow servants were sent to this building this plank, apparently designed for the purpose of a crossing between the wall and pier, was already in place; it was sufficient for the purpose; it had been in place for a considerable length of time, as shown by the evidence, and there was no apparent use to which it could be put except that of crossing from the wall to the pier, and back again. The argument is, of course, that this was one of the instrumentalities with which the master provided these servants, and was not one which they provided themselves. It was therefore the master's duty, before turning it over to them to be used for the purpose of their work, to exercise reasonable care to see that it was reasonably safe for the purpose for which it was apparently designed and in-

tended.  Argument is made that the plaintiff had no busi-
ness to use this plank; that he was out of the line of his em-
ployment in going upon the pier to get this material.  This
contention, however, is not supported by the evidence.  Upon
the contrary it is shown that these men erecting these scaf-
folds were required to get their material at any point upon the
work at which they could find it.  Here was suitable material
upon the pier; here was an apparently suitable way provided
by the master for securing this material, and it cannot be said
that the plaintiff violated any duty in securing, or attempt-
ing to secure it, in the manner in which he did.

A case very much like this in its facts is that of *Farrel* v.
*Eastern Machinery Co.,* (Conn.) 68 L. R. A. 239.  In that
case the plaintiff, a laborer, was sent out to assist in installing
an elevator.  The party under whose direction he was work-
ing with the assistance of the plaintiff erected a scaffolding
over the elevator well.  It was necessary for the defendant's
employes to stand upon this scaffolding while installing the
appliance.  The plaintiff assisted in erecting this scaffolding,
but the material therefor was selected by the man in charge
of the work.  One of the planks selected was insufficient, and
while the plaintiff was standing thereon engaged in doing the
work it broke, and he fell, suffering an injury for which he
sued, and recovery was allowed, the court holding that it was
the duty of the defendant company to exercise reasonable
care in the selection of material to be used in the construc-
tion of the scaffold, and the employe had the right to be-
lieve that this duty had been performed by the master in the
absence of any knowledge to the contrary.  That case is much
stronger in favor of the defendant than the case here, for in
that case the plaintiff actually assisted in constructing the
scaffold which fell and broke, but the recovery is based upon
the theory that so far as selecting the material was concerned
he had no part therein, this being done by another servant of
the master.  Another case is that of *Sims* v. *American Steel
Barge Co.,* 56 Minn. 68, 45 Am. St. Rep. 451, which is
somewhat similar to the case at bar.  In that case the scaf-
folding to be used by the injured servant had been erected by
another crew of men, and the court held that the master hav-

ing undertaken to provide a scaffold the injured servant had a right to rely upon it being suitable for the purpose for which it was intended. So we may say here that this plank having been provided as a passage way from the wall upon which plaintiff was working to the pier to which his duty called him to go for material, he had a right to believe that the master in making the provision had exercised reasonable care in selecting the plank, and in placing the same in position. Of course if there had been no provision made in this regard, and the plaintiff had been required to bridge this chasm himself, then he could not claim a breach of any duty upon the part of his employer. Our own case of *Richards* v. *Riverside Iron Works*, 56 W. Va. 510, lays down the doctrine that in the construction of a scaffold provided for the workmen the master is bound to exercise reasonable care that the same is made reasonably safe for the purpose to which it is put, both as to the character of the material used, and as to the manner of its construction.

But it is argued that the evidence does not show that the plaintiff suffered the injury by reason of any lack of care in the placing of the board, or that it was not reasonably safe as a passage way. The evidence on this question shows that the top surfaces of the wall and pier were somewhat rough; that there were stones or gravel projecting above the level surfaces of the concrete; and that the board was laid on these rough surfaces. The plaintiff says in one place that when he got the plank on the pier he turned toward the wall, made a step, and fell, without stating that he stepped on the board, or that the board turned over with him. In another place in his testimony he states that when he picked up the board he was to take back he stepped on the crossing plank, and it turned up on the edge and threw him to the ground. We think it may be said that it was a question for the jury as to whether or not reasonable care was used in placing this plank across this chasm upon the rough surfaces upon which the ends rested without taking any precaution to make them level or the plank secure from turning because thereof. The defendant company having undertaken to provide this means of crossing was under obligation to use reasonable care to the

end that the provision would be reasonably safe, and it was for the jury to say whether or not a plank laid, as this one was, upon a rough uneven surface upon each end, so that it was liable to turn with one crossing it, was such reasonable provision.

The defendant urges that even assuming that it was its duty to use reasonable care to make this board reasonably safe, it having undertaken to provide it, still the judgment will have to be reversed, for the reason that the court misdirected the jury upon this question. The instruction on this question given by the court, of which complaint is made, is: "The jury are further instructed that it was the duty of the defendant as the employer of the plaintiff to furnish said plaintiff a safe place to work, and that by reason of such failure said plaintiff was injured, then the jury should find for the plaintiff and assess his damages at such an amount as will compensate him for such injury or injuries so suffered at the hands of the defendant." It will be noted that taken in its literal sense at least this instruction required the employer to provide a safe place for the work, and as applying this direction to the concrete case before us the jury would have to take it as meaning that the master, having undertaken to furnish this passage way from the wall to the pier, was under obligation to make it safe for crossing by persons called upon to use the same, and particularly by the plaintiff. It is argued that there is an element of danger in the use of such a passage way which the master is not called upon to remove, even though it could be removed by the use of more than the usual care exercised in the case of construction work upon buildings. It is well known, and is proved in this case, that in carrying on such construction work it is frequently necessary for the various employes to pass from one part thereof to another over passage ways provided at considerable heights from the ground, and more or less danger always attends such operations, even when ordinary or usual care is exercised, that is, the care ordinarily exercised by those engaged in that class of work. Of course, taking the instruction given literally, the obligation would have been upon the defendant to have done everything which could have been done to make this

passage way safe for those using it. It may be said that such
action could have been taken as to have insured almost ab-
solute safety in its use, and this may have been the view the
jury took in applying the instruction given to the state of
facts proved. The rule is not that the master is required to
furnish a place of absolute safety, or to use the highest de-
gree of care in furnishing a place of safety, or in keeping it
safe, but only that he must provide a reasonably safe place,
a suitable place under all the circumstances; one in which
the employe may perform his work subject only to the risk
usually attending it, considering his employment, the charac-
ter of the work being done, and the element of danger ordin-
arily attending its performance; and having done this he must
further exercise like reasonable care to keep the place in that
condition. Having done this, his full duty has been per-
formed in that regard. Plaintiff contends, however, that this
judgment ought not to be reversed because of the giving of
this instruction, for the reason that the word safe as used by
the court could mean nothing but reasonably safe, or fit, or
suitable. We cannot accede to this proposition, particularly
in view of the fact that this court has on many occasions seen
fit to define the duty of the master in this regard, and to
distinguish it from an absolute duty to provide a working
place of absolute safety. *Richards* v. *Iron Works,* 56 W. Va.
510; *Goshorn* v. *Foundry Co.,* 65 W. Va. 250; *Soward* v. *Car
Co.,* 66 W. Va. 266; *Richardson* v. *Coal & Oil Co.,* 68 W. Va.
759; *Whorley* v. *Lumber Co.,* 70 W. Va. 122.

In view of the facts proved we are of opinion that it was
error to give the instruction above referred to; that it was
calculated to mislead the jury into the belief that the master
owed a higher duty to the plaintiff than that imposed by law.
Whether or not the master's duty had been performed was a
question to be determined by the jury from the evidence,
and from the circumstances existing and surrounding the
plaintiff in his work, and to impose by an instruction upon
the master a higher duty than the law imposes would allow
the jury to find a breach of duty upon its part upon a finding
of fact which would not in law constitute such a breach.

Our order will reverse the judgment complained of, set aside the verdict of the jury, and remand the cause for a new trial.                              *Reversed and remanded.*