# CHARLESTON.

### J. E. KIRK v. THE VIRGINIAN RAILWAY COMPANY

#### (No. 6147)

Submitted March 7, 1928.     Decided March 13, 1928.

MASTER AND SERVANT—*Whether Employee Appreciates Extraordinary Dangers and Assumes Risk Precluding Recovery Under Federal Employers' Liability Act is Generally for Jury; Whether Brakeman Going in Front of Moving Cars to Throw Derail Switch Was Negligent and Thereby Assumed Risk Held for Jury (45 USCA §§ 51-59).*

Whether in an action under the Federal Employers Liability Act an employee knows of and fully appreciates the extraordinary dangers resulting in his injuries and thereby assumes the risks thereby incurred, precluding recovery, is generally a question of fact for the jury.

(Master and Servant, 39 C. J. § 1365.)

(NOTE:  Parenthetical reference by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Mercer County.

Action by J. E. Kirk against the Virginian Railway Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Williams, Lovall & Taylor, H. C. Ellett* and *Hall & Buford,* for plaintiff in error.

*W. Cody Fletcher* and *John R. Pendleton,* for defendant in error.

Miller, President:

This is an action for personal injuries sustained by plaintiff while employed as a brakeman and while in the act of throwing a derail switch on a side track at the town of Narrows in Virginia on defendant's railway. There was a conditional verdict for plaintiff on defendant's demurrer to the evidence, of $45,000.00, from which the trial court, on motion of defendant to set it aside, and on terms of setting the same aside, required the plaintiff to remit $15,000.00, which was done; and the judgment complained of here was that the motion be overruled and that the demurrer be also overruled, and that plaintiff recover of defendant the sum of $30,000.00 with interest and costs.

The action was predicated on the Federal Employers Liability Act of Congress and the alleged negligence of the defendant and its employees resulting in the injuries sustained, those injuries being the cutting off of his left arm just below the elbow, the breaking of his leg, and other injuries from bruises and the consequent pain and suffering and loss of time sustained.

The acts of negligence alleged were, first, the failure of the defendant to employ competent and skillful employees, and second, their failure to use proper and reasonable care in the movement, handling, operation and control of the electric motor and freight cars attached while plaintiff was working about the same movement in the discharging of his duties. The specific act of negligence alleged and relied on was that the engineer and fireman failed and neglected to observe the stop

signals given by the conductor of the train when plaintiff was seen by the conductor in the act of running towards, and in an effort to get to, the derail switch and throw it in time to save the backing motor and coal cars attached from being wrecked or derailed, as it was his duty to do, which train consisted of the motor, one gondola and ten hopper cars loaded with coal, which coal cars were being set off on the side track at the point indicated.

The defendant interposed the defense of want of negligence on the part of its employees as alleged, and negligence and assumed risk on the part of the plaintiff in seeing and appreciating his dangers in going in front of the backing motor and cars and thereby voluntarily placing himself in the place of danger without having taken the precaution as he might and should have done, to himself signal the motormen and stop the movements of the train; to all which the plaintiff replies that in riding the side of the last car in the train as he was obliged to do, and in alighting in time to run ahead to throw the derail, he was not in a position where he could see the motormen or be seen by them in time to give the stop signals, but that when he alighted he saw the conductor giving the proper signal, and who could and did appreciate the necessity of guarding plaintiff against the dangerous operations of the train, and that he did and had the right to rely on the trainmen to discharge their duties.

To sustain their position on the facts, defendant's counsel emphasize the plaintiff's evidence relating to the point of time when he got to between twenty-five and thirty feet of the derail and crossed over, quartered over between the rails, and in which he says he did not look or listen to see if the cars were following him; but admitted that he could hear the slight noise they were making, but that it seemed to him that they were farther away, and that he did not turn around or look back to see how far away they actually were. They argue from this evidence that, though he was engaged with the other employees in the same operation, plaintiff could not assume that they would observe their duties but did not, and that he thereby assumed the risk of their not doing theirs, and therefore he is not entitled to a recovery.

It seems to us that the position of counsel for defendant is untenable and not supported by the authorities relied on. In *Davis, Agent* v. *Kennedy, Administratrix,* 266 U. S. 147, relied on, Kennedy was an engineer on train No. 4, and was killed in a collision with train No. 1 which had the right of way, as he knew, and who deliberately disobeyed the instructions of his superior officer and ran past the point of passage resulting in the collision. In that case, it was undertaken to apply the principle applicable here. It was denied that the deceased had the right to rely on other officers and agents doing something to avert his mistake. There the engineer's was the primary duty. *Frese, Adm'x.* v. *Chicago, Burlington & Quincy R. R. Company,* 263 U. S. 1, was like *Kennedy* case in that on the engineer whose death was sued for, rested the positive duty required by statute and the primary duty to stop and positively ascertain that the way was clear and that his train could safely resume its course, making such neglect a complete defense to his action. The rule applicable here is not that it is the duty of an employee to exercise care to discover extraordinary danger that may arise from the negligence of the employer, or of those for whose conduct the employer is responsible, but that the employee may assume that the employer, or his agents, have exercised proper care with respect to his safety. Such is the rule laid down in *Chicago, Rock Island & Pac. Ry. Company* v. *Ward,* 252 U. S. 18; *DeAtley* v. *C. & O. Ry. Company,* 241 U. S. 310; and in our case of *Harness* v. *B. & O. Ry. Company,* 86 W. Va. 284, and *Looney* v. *N. & W. Ry. Company,* 102 W. Va. 40. The risks assumed by an employee since the passage of the Federal act as held in the *Looney* case, do not include risks incident to the negligence of the carrier's officers, agents or employees. *Looney* case, page 52, and authorities cited. But though not a favored doctrine, as this and the Federal cases cited hold, an employee does assume the extraordinary dangers and hazards which are apparent to him and which he sees and appreciates, but the burden of showing which is upon the railway company, and generally the fact of such knowledge and appreciation on the part of the employee is a question of fact for the jury to determine. *Harness* v. *B. & O. Ry. Company,*

*supra*, syl. page 8.   In the case of *Boldt* v. *Pennsylvania R. R. Company*, 245 U. S. 440, reviewed by Judge LYNCH, along with other Federal cases, in the *Harness* case, just cited, and especially relied on by defendant's counsel, as having clarified and modified the rule previously established by the Federal Supreme Court respecting the question of assumption of risk by employees, Judge LYNCH says that the modified rule is applicable only when the employee knows of the extraordinary risks, or it is so obvious that a reasonable person would have appreciated it, generally a question for the jury. It is not difficult to apply the modified rule in the *Boldt* case, if a modification, for there the deceased was killed in a freight yard due to an impact by a string of cars moving by gravity, under control of a brakeman, against the end of a train on which deceased was working, but the custom of operating such cars in the yard and the dangers incident thereto was known to deceased and fully appreciated by him.

Can we say in this case as a matter of law that Kirk, bent on his duty to throw the derail, was negligent in assuming that the other trainmen, particularly the engineer and fireman, would not perform their duties towards him, and saw or should have seen and appreciated the fact that they were not doing so, and thereby assumed the risk of going in front of the moving cars, which as the engineer knew he was obliged to do, to perform his duty? Considering this case with reference to the rule applicable to a demurrer to the evidence, we must assume as a fact Kirk's evidence that when he alighted from the moving train within about two hundred feet from the derail and ran along towards it outside the track, he observed the conductor upon the hump opposite signalling the motormen to stop, and relied on him and the trainmen to do their duty.   And the conductor admits that he was there, saw Kirk alight and saw him running towards the derail.   Also the evidence of Kirk is that he did not cross over from the north side to the south side of the track until within twenty-five feet to thirty feet of the derail, and did not run between the rails in front of the train until that instant.   The conductor admits that he saw Kirk start across the track, gave the emergency signal and continued to do so,

and that the train stopped, but he could not tell from where he stood on the hump whether it was an emergency stop or not, nor whether or not it was a good stop. The engineer swears that he could have stopped the train in from eighteen to twenty or twenty-two feet. The fact admitted is that he ran both the first two cars and at least a third of the third car, under which Kirk was found, over the derail. Each of these cars was from drawhead to drawhead about thirty-five feet in length, which shows that he ran from eighty to ninety feet beyond the derail, when if he had executed the emergency signal he might have then missed hitting Kirk by a safe distance before reaching the derail. That these trainmen were negligent in their conduct towards Kirk, there can be no doubt. The engineer knew the location of the derail, and by their knowledge of the length of their train ought to have been able to gauge the distance and where they were likely to come in contact with Kirk and to be on the lookout for signals. This evidence convicted them of negligence and acquitted Kirk of any negligence or assumption of the risk of defendant's negligence or of the negligence for which defendant was responsible.

Considering the point of error that the verdict of the jury as modified by the remmititur is excessive, we can not hold in the light of our decisions on that subject and of the Federal cases thereon, that there is any error therein. Plaintiff at the time of his injuries was 45 years old, and was then earning from $2,200.00 to $2,500.00 per year. He suffered great pain and was maimed and disfigured for life and his earning capacity greatly reduced. We are not disposed to reverse the judgment on the ground that it is excessive.

*Affirmed.*