# CHARLESTON.

JOSEPH HOLTON *v.* CLAYCO GAS COMPANY

(No. 6249)

Submitted November 13, 1928.   Decided November 20, 1928.

*Charles Powell, Kemble White* and *A. F. McCue,* for plaintiff in error.

*Jacob D. Smith* and *Lilly & Lilly,* for defendant in error.

LIVELY, PRESIDENT:

In this action of trespass on the case for personal injuries, plaintiff, Joseph Holton, recovered a judgment of $2,000.00 against the defendant, Clayco Gas Company. This writ followed.

Plaintiff's amended declaration charges that the Gas Company, a non-subscriber to the Workmen's Compensation Fund, while engaged in building a gas pipe line in Lincoln county, employed the plaintiff to work for it; that it was the duty of the defendant company to provide the plaintiff safe roads and places, in and over which to work and travel while so employed; that the defendant company and its agent breached this duty by negligently constructing a roadway along and about its right of way for said pipe line, through the lands of E. F. Johnson, in said county, by cutting away all the wires from a barbed wire fence, except the bottom wire near the ground, thus leaving a partial opening through said fence across its right of way, through which its employees were required to travel to their work for the defendant company; that the said wire tightly stretched and not cut away as aforesaid, caused a dangerous obstruction to its employees; that while working for defendant on the Johnson farm, the plaintiff was ordered to go to a pipe line ditch on the farm of L. R. Sweetland; that pursuant to said instructions and while burdened with the tools of his labor, the plaintiff started to walk along the right of way and through the gap in the fence, exercising due care on his part, when he caught his foot against the tight wire which had not been cut loose from the post in the wire fence, causing him to fall violently into a pile

of rock piled along the right of way, whereby he received a permanent injury to his left hand and wrist, by reason of which he sustained damages of $5,000.00.

The court overruled the defendant's demurrer to the amended declaration, and issue was joined upon the plea of not guilty entered by the defendant, with the result hereinbefore indicated.

The first assignment of error is the failure of the court to sustain the defendant's demurrer to the amended declaration. The declaration charges the duty of defendant to plaintiff to provide plaintiff a safe place in which to do his work and to travel about over the work while thereon; the breach of that duty by negligently leaving a dangerous wire where plaintiff travelled; and the injury resulting from the negligent act. This declaration states all that is required in cases of this character. "You must aver the duty, and aver the existence or presence of negligence in its performance, and specify the act working damage, but need not detail all the evidential facts of negligence." *Snyder* v. *Wheeling Elec. Company,* 43 W. Va. 661; *Diotiollavi* v. *Coal Company,* 98 W. Va. 116.

The remaining points of error can be considered under the assignment that the verdict is contrary to the law and the evidence. It will be noted that in determining this question all of the defendant's evidence in conflict with that of the plaintiff must be disregarded.

It appears from the evidence, that in the summer of 1925, the defendant, Clayco Gas Company, a non-subscriber to the Workmen's Compensation Fund, was engaged in constructing a pipe line for the transportation of natural gas through Lincoln county. Six or seven hundred men ( among whom was the plaintiff) were employed on this project. A portion of this pipe line was laid upon a right of way over the Johnson farm. The place of plaintiff's fall and injury was on defendant's right of way on a steep bank just below a county road which crossed the pipe line right of way at right angles. The right of way, twenty feet wide, came down the hill to the public road, crossing it at about an angle of 90 degrees, thence over a steep embankment at the lower edge of the road, and then down over the bottom land, and thence on over the

Johnson farm. Along the lower edge of the road was a barbed wire fence of three strands fastened to posts and small timber, and according to defendant's evidence, the two lower strands had been cut and thrown back, the upper one being raised higher in order to permit workmen and horses to pass in and out under it. On the other hand, plaintiff and some of his witnesses say that the two upper strands were cut and the lower strand remained intact. Plaintiff (and 27 others) having been ordered to leave that particular part of the Johnson farm where he worked as a trench-digger and to go to the Sweetland farm a short distance away to do further digging, says that burdened with his tools while hurriedly going up the steep embankment just below the road to catch up with his fellow workmen, who had already gone through, and in order to get into the road, caught his foot and pantaloons in one of the strands of the barbed wire stretched about six inches above the ground, causing him to fall among some rocks lying there, which fall resulted in permanent injury to his left hand. Another witness, perhaps two witnesses, just ahead of plaintiff observed the fall and saw the wire. There is some conflict in the evidence as to the existence of this wire at that place when plaintiff was injured. Defendant's witnesses say that the two lower wires had been cut and thrown back and several of them say that the six-inch sections of pipe had been "snaked" from the road down over this embankment with horses, implying from that evidence that no wire six inches above the ground could have remained there. However, some of plaintiff's witnesses say that, judging from the worn places on the ground, the pipes were "snaked" over the embankment for the work at another place, and were not "snaked" over this particular place, because it was too steep and rugged. Plaintiff and his witnesses do not undertake to say how this wire over which he fell was fastened at each end in order that it should be thus stretched above the ground. But on rebuttal, Ashworth who was a foreman of the men who covered the pipe line at that particular place, says that there was a wire there about six or eight inches from the ground, and in filling up the ditch with rock and dirt, he filled over that wire, which came to within about one

foot of the ditch, and left it in there. So, the contradictory evidence on the presence of the wire and its location may be reconciled. Defendant's witnesses say that the two lower strands were cut, thrown back and the pipe "snaked" through. That does not preclude the wire from later being found across the one side of the right of way to within a foot of the ditch, and one end fastened to a maple bush and the other imbedded in the earth and rock which filled the ditch, as stated by Ashworth. This was a jury question, and the jury having found that the wire was there and in the situation detailed when plaintiff was injured, that finding cannot be disturbed. The jury may always make reasonable inferences from the evidence, and reconcile its conflict. Under this evidence, disregarding all of defendant's testimony in conflict with that of plaintiff, the jury could have reasonably found that the lower strand had never been cut or removed; or if cut, had been left across the right of way six to eight inches above the ground, as detailed by Ashworth.

Defendant says the verdict and judgment should not stand, because the wire, if there, could have been easily perceived by plaintiff, and his negligence in not seeing it proximately caused the injury; and also that when he accepted the employment he assumed risks ordinarily incident to his employment, and the risks arising from his own negligence. When an employer comes within the purview of the Workmen's Compensation Act, and is not protected by it, and a suit is brought against him for an injury occurring to one of his workmen received in the course of his employment and arising out of it, he cannot interpose as a defense assumption of risks, or negligence and carelessness on the part of the workman, where the employer has been negligent himself and from which negligence the injury resulted. The basis of a suit for personal injury is *negligence* on the part of the employer, and if that be wanting, the plaintiff cannot recover. The Compensation Act does not change that principle of law. But by reason of the Act, when negligence has been shown on the part of the master, his officers, agents or employees, assumption of risk and contributory negligence on the part of the servant will not defeat recovery. *De Francesco* v. *Piney*

*Mining Co.*, 76 W. Va. 756; *Watts* v. *Ohio Valley Elec. Co.*, 78 W. Va. 144; *Wilkin* v. *Koppers Co.*, 84 W. Va. 460; *Zinn* v. *Cabot*, 88 W. Va. 118. So, in this case and every other of this character, there can be no recovery unless the employer, his agent or employee is guilty of some negligence from which the injury may be directly traced. Was there negligence here on the part of the employer, his agents or employee other than plaintiff, which caused the injury? That is the crucial question. For if there was not such negligence then the peremptory instruction to find for defendant should have been given. If there was such negligence, the contributory negligence of plaintiff, and his assumption of risk will not preclude recovery. The want of a reasonably safe place to work caused by leaving the wire six inches above the ground, across the right of way on which plaintiff worked, is the negligence charged. The jury has found that the wire was there as charged, and as before stated, under the well established rule, that finding cannot be disturbed. Plaintiff was instructed to confine his operations to the right of way. He had the right to presume that it was reasonably safe. Some one in the employ of defendant, other than plaintiff, had attempted to clear the right of way from the road down this steep rocky embankment on which other rocks were thrown from the ditch, by removal of the barbed wire fence. To leave a barbed strand of wire six inches above the ground not readily perceivable (as some of the witnesses say) on this steep rocky place was not conducive to safety, to say the least. It might have caused serious injury to one descending the embankment. We cannot, as we are here asked to do, hold as a matter of law that it was not negligence to leave that strand of wire under the situation here developed. The jury would have the right to determine whether under the circumstances detailed, the wire made that passageway dangerous. *Schilling* v. *Koppers Co.*, 83 W. Va. 737. It is argued that the laying of a pipe line across a mountainous country is a constantly changing work bringing about situations of danger which cannot be provided against by the employer, and therefore the leaving of the wire on the embankment was not negligence under the changing conditions; and

*Miller* v. *Berkely Limestone Co.,* 70 W. Va. 643; *Burton* v. *Coal Co.,* 77 W. Va. 319; *Laas* v. *Lubic,* 105 W. Va. 513, 144 S. E. 225, and kindred cases are relied upon. The facts here are quite different from the facts in those cases. They are quite a different class of cases from this one. Here the master has attempted to make a reasonably safe and convenient passage through a wire fence on his right of way, and in doing so has, in fact, created a dangerous place on his right of way, and common experience teaches us that a barbed wire this far from the ground on a steep embankment would be likely to cause a serious fall. Plaintiff, had no part in creating this dangerous condition, or the changed condition of the right of way. 39 C. J., p. 348, sec. 466. The contention here that defendant had no duty to provide a safe way to and from the place of employment has no bearing, for the dangerous wire was not on a road to the work, but on the right of way itself where the employee worked, and it was in the discharge of his duties there on the work that plaintiff was injured. Whether the employees generally used the right of way through this wire fence or elsewhere in going to or from work, or whether they indiscriminately used other ways, is not important or controlling. This injury occurred while the plaintiff was going from one place of the work to another place of work over the right of way, under the control of defendant. Several of plaintiff's fellow workmen had just passed ahead up the steep embankment and through the gap in the fence going to the same work, and he was hurrying to overtake them burdened with his tools, when the accident occurred. Generally, (and when the Compensation Act does not apply), the servant assumes those risks and dangers which are ordinarily incident to the employment, but he does not assume extraordinary risks, or risks due to the negligence of the master until he becomes aware of such negligence or negligent acts, or unless the danger is so obvious that a prudent person should have observed it and appreciated the danger; generally the fact of such knowledge and appreciation is a question of fact for the jury under all of the circumstances of the particular case. *Kirk* v. *Virginian Ry Co.,* 105 W. Va. 335, 142 S. E. 434. We conclude that the evi-

dence is sufficient to warrant the jury in finding that the wire so left made the place not reasonably safe for the employees engaged at that place; that the wire was the cause of the injury; and therefore, defendant could not interpose as a defense contributory negligence of plaintiff in not seeing and avoiding the wire; nor the assumption of risk as incident to the employment, defendant not having been protected by the Workmen's Compensation Act.

There is much controversy in the evidence whether the fall caused the injury or whether the condition of his hand was the result of a boil on the back of it. Two witnesses who saw the fall say the injury and pain was so severe at the time that plaintiff shed tears because of it. He went on to the Sweetland farm and continued his work using one hand, as he says. That night he attempted to assuage the pain. Next day he returned to work and attempted to perform his duties but the pain continued, and he was given the place of water carrier, which was easier. He says he told the foreman of his injury and its cause. The foreman denied that. He went to the drug store for linament, consulted a veterinary, and finally had a surgeon to lance the wound from which bruised blood exuded. A week later, still being in pain, he went to a hospital at Huntington, where he was treated for three months intermittently, then came home where he was treated by Dr. Henson, who applied splints believing it was a fracture. The muscles of the hand perished and became what Dr. Henson called a ''claw'', having a bluish tint caused principally by disuse.

On the other side there is evidence that plaintiff worked on the pipe line the next day as usual, and after he quit working for defendant, worked on his farm, and on various occasions said to different persons that his hand was disabled by a boil. We must disregard the verbal testimony of defendant's witnesses in conflict with that of plaintiff's testimony. Whether the resultant injury was primarily caused by the fall, was peculiarly a jury question, and they could have reasonably found that it was so occasioned. Plaintiff offered no instructions. Defendant's instruction No. 2 was given, but its instruction No. 1, which would have told the

jury to find for defendant, was refused. It is apparent from what we have said that no error was committed by refusing the peremptory instruction. Finding no reversible error, the judgment will be affirmed.

*Affirmed.*