# CHARLESTON.

Peter Moll *v.* T. F. Bayha

(No. 6512)

Submitted November 5, 1929.   Decided November 12, 1929.

*Nesbitt, Goodwin & Nesbitt* and *Tom B. Foulk,* for plaintiffs in error.

*Wm. J. Gompers* and *Austin V. Wood,* for defendant in error.

LIVELY, JUDGE:

At the conclusion of the evidence the court, on motion of plaintiff, instructed the jury to find for plaintiff, a verdict was returned as directed, and after the usual motion to set aside, judgment was entered on the verdict for $6,480.00 on January 17, 1929. This writ followed. Defendants asked the court for a peremptory instruction in their favor, and for other instructions, all of which were refused.

Defendants contend that they should have had a peremptory instruction, or if not, then the question of their negligence should have been submitted to the jury under proper instructions; while plaintiff contends that the court did not err in directing the jury to find for him.

The declaration charges that the relation of master and servant existed between defendants and plaintiff, and that defendants did not furnish plaintiff a safe place to work in that they had constructed on the premises where he was employed an unguarded and unlighted pit in an air and light passage between defendants' plant and an adjoining building, into which, without knowledge or warning of its existence, plaintiff fell on a dark night and was injured; and that defendants were not subscribers to the Workmen's Compensation Fund.

The following plat will visualize the premises where the accident occurred, and assist in understanding the evidence.

Plaintiff was hired as a baker by defendants (a partnership) on Wednesday, and was shown to his place of work on that night. The way to the bakery in defendants' plant, for the workmen, was from Market Street in the city of Wheeling through a gate kept locked into the brick paved passageway between the Bayha and Stifel buildings (shown on map); thence to a widening of the passageway, or to a small court, thence through a door, marked X on the map with an arrow pointing to it, into a storage room where there were lockers for the workmen. Plaintiff followed this course in company with another workman on Wednesday night, and made his exit by the same way next morning in daylight; on Thursday night he came back about twelve o'clock and followed the same route in the company of another workman; on Friday

Geo. E. Stirel Co.
D.B. 83 P. 435

LEASED TO GEO. E. STIREL CO. BY H.C. SMITH ET AL. JULY 31, 1921:
D.B. 186 P. 74
LEASE ASSIGNED TO NATIONAL DEPARTMENT STORES INC.
JAN. 24, 1923 D.B. 186 P. 259

5 FOOT SPACE BETWEEN BUILDINGS FOR LIGHT AND AIR

7 FACE OR BRICK WALL

STIREL ROOM

WASH ROOM

ELEVATOR

LOCKER ROOM

STORAGE ROOM

BRICK PAVED COURT, OR YARD.

BOILER ROOM

PROPERTY LINE

BRICK PAVED PASSAGEWAY

GEO. E. STIREL CO.
D.B. 174 P. 85

GEO. E. STIREL CO.
D.B. 174 P. 142

D.B. 175 P. 146

THOMAS PERRY
D.B. 159 P. 188

GOTTLIEB BAYHA TO CLARA BAYHA AND E.R. BAYHA
WILL BOOK 9 P. 150.

SHOW ROOM

MARKET STREET.

morning he went out through the building onto Market Street, and that day was given keys to the Market Street gate entrance to the door marked X on the map and to a locker in the storage room. He says there were five or six keys given him, while Bayha says he was given only three keys on a keyring. Friday afternoon about five o'clock (in daylight) he came back to work and pursued the same way to his work, and left by the same way about eight o'clock on Saturday morning. He came back to work a few minutes after twelve o'clock (his usual time of beginning work) on Sunday night, unlocked and entered the Market Street gate and came to a door on the court or yard. He says he tried the keys but was unable to unlock the door, and then went on back for the purpose of knocking on one of the windows to attract the attention of his fellow workmen and obtain entrance. It was a dark rainy night, and he says it was very dark in the paved court and passageway. He did not knock on the first windows because of bricks and debris piled in front of them in the court, and went on back to where the court narrowed to the five-foot light and air space between the buildings, thence a distance of ten feet to the pit where there was a sheer drop of six and one-half feet, and walked into it receiving a severe injury to his right hip. There is some uncertainty as to whether he was attempting to knock on the window at that point, or whether he just walked into the off-set in the air and light space between the buildings. He made an outcry and two of his fellow workmen hearing him observed him on his knees with his hands on a ladder in the pit. They ran out of door marked X, which was a screen door, and which they say was not locked (they just pushed it open) followed by Mr. Bayha, who took a flashlight, and one of them carried him into the building on his back. Dr. Hupp was immediately sent for and he took plaintiff to a hospital, where he remained for about two weeks. The distance from the Market Street entrance to the screen door marked X was about 54 feet, the brick paved court was thirteen feet nine inches wide and about 38 feet in length; the distance from the screen door to the end of the court was about 21½ feet, where the air and light space began which was about four feet and eleven inches

in width; and the pit in the air and light space between the buildings was located about ten feet from the court; or a distance of 31½ feet from the screen door. No one ever went back to this pit except the persons who cleaned it out. It served some purpose in connection with the building. A window in the Bayha building was located just about where the drop in the air and light shaft began. These windows will appear on the map, as well as the locations and watt power of the electric lights near them. There was a 100 watt light just inside the screen door. These lights were burning, as well as lights in Stifel building reflected through the two windows in that building marked on the map. The two windows in the Stifel building were frosted, but the windows in the Bayha building were not. Plaintiff says the passageways and the court were dark, whereas, several witnesses say that all the lights were shining through the windows, that the screen door was open (that is the door behind the screen) and the 100 watt light shone out into the court. The evidence of three witnesses for defendants, is that the court and the air and light space were reasonably well lighted. One of plaintiff's fellow workmen in the building could see plaintiff on his hands and knees in the pit, and immediately left the building and went to his aid, accompanied by another workman. The distance, location of lights, windows and doors are detailed at length for they have a very material bearing on whether the master had furnished a reasonably safe place for plaintiff to work, reviewed in the light of the circumstances surrounding the accident.

Defendants assert that under this evidence no liability has been shown and they should have had an instructed verdict in their favor, on the theory that a safe way for the workman to and from his work had been provided and that he was an invitee on the premises only so far as he travelled this safe way; but after he left it and went 31½ feet therefrom he was a licensee or trespasser and travelled at his own risk; that after he left the way provided, the only duty owing from the master was not to wilfully injure him. Defendants' contention is that the invitation to plaintiff extended only to the way from the gate at Market Street down the passage and to the

door marked X, and any deviation from that way, even under the circumstances detailed, resulting in accident and injury excused the matter. According to plaintiff he attempted to follow this way, but the night being dark and he being unable to unlock the door at which he first arrived, he made an effort to reach his place of work by attracting the attention of his fellow workmen to his predicament. According to defendants' contention, if plaintiff had attempted to knock on the first window beyond the screen door X and had been injured by falling over the debris under it, he would have no right of recovery. It is true that he went where he could not reasonably be expected to go, if, as defendants contend, the court and air way behind it was reasonably lighted. An employer is entitled to rely on the presumption that due care will be exercised by the servant to avoid injuring himself. 3 Labatt, Master and Servant, p. 2487, sec. 926. But for the propriety of giving a peremptory instruction, the evidence of plaintiff must not be discarded although the preponderance of the evidence in the judgment of the court may contradict his evidence. It is the province of the jury to pass on the weight of evidence. Plaintiff was on his master's business in seeking entrance to the building and did not deviate from the customary way of entrance on his own pleasure or whim. If his evidence be true, that the passageway and court were very dark, it might be reasonably expected that he would be confused, and proceed beyond the door of entrance, either inadvertently or designedly. The pit was not such a distance away as would preclude probability of danger from it on a dark night. It may be conceded that where there is a large plant covering acres, perhaps, and an employee whose duties confine him to a particular spot, could not recover for any defect in the plant in a remote part thereof into which he might wander; but here, there is a small space surrounded by walls with an unguarded pit within 31½ feet of the customary way, which, we think, might spell danger, taking it for true that plaintiff could not see and had to feel his way. Besides, it must be remembered that this was the first night he had attempted the way without being accompanied by a fellow workman. The owner of premises of this character

who invites others upon them for a lawful purpose is liable for injuries received by them while pursuing that purpose, resulting from the unsafe condition of the premises or approaches thereto, they using due care, and the unsafe condition being known to him and not to them. This is the general rule, and the facts, *as detailed by plaintiff*, do not make this case an exception. It was not error to refuse defendants' peremptory instruction.

On the other hand, and for the same reason, it was error to instruct the jury to find for plaintiff. The gravamen of the declaration is that defendants did not provide a safe place for plaintiff to work. Although defendants were not subscribers to the Workmen's Compensation Fund and are thereby precluded from interposing the defense of assumption of risk, contributory negligence and the negligence of a fellow workman, yet it was incumbent on plaintiff to show that defendants were guilty of negligence which proximately caused the injury. *De Francesco* v. *Piney Mining Co.,* 76 W. Va. 756; *Holton* v. *Gas Co.,* 106 W. Va. 394.

It is not the duty of the employer to provide an absolutely safe place to work. He is not a guarantor in that regard. All that is required is a reasonable safe place, or reasonably safe approaches or appliances. "It is the duty of the employer to provide for his employees a reasonably safe place in which to work, and reasonably safe and convenient means of access to the premises and to the places thereon assigned for work." *Wilkin, Adm'r.* v. *Koppers Co.,* 84 W. Va. 460, 2nd Pt. Syl.; *Schilling* v. *Koppers Co.,* 83 W. Va. 737. Has he done so in this case? The argument of plaintiff is in the negative. The court, by its peremptory instruction, came to like conclusion. The way provided was reasonably safe under ordinary circumstances. No workman had ever gone back to the air way on any purpose connected with his employment, or otherwise; they were not required or expected to do so. It could not be reasonably anticipated that any one going back there would walk into the pit which could ordinarily be seen. But here the accident was at night and plaintiff claims that he could not see, while there is much evidence, as heretofore shown, that the court and air shaft were lighted. The question is not that

defendant was negligent in leaving an unprotected off-set in the *cul de sac* air and light space, but whether under evidence and circumstances the place was reasonably safe for a prudent employee having due regard for his own safety. Suppose the jury, untrammelled by a peremptory instruction, had found that the place under the evidence was reasonably safe. It follows that there could have been no recovery. Defendants' evidence that the place was reasonably lighted cannot be discarded by the court, as was done by giving the peremptory instruction. Plaintiff's evidence that the place was very dark could not be discarded in order to warrant a peremptory instruction for defendant, and by the same token defendants' evidence that the place was reasonably well lighted cannot be ignored by giving plaintiff the peremptory instruction. Clearly a question of vital fact was raised by the evidence and was for jury determination. In *Schilling* v. *Koppers Co.*, 83 W. Va. 737, a plank had been laid from the top of a concrete wall to the top of a concrete pier about five feet therefrom, during the construction of the building, evidently for a passageway across the chasm. The surfaces on which the plank rested were more or less uneven, and a newly employed carpenter in attempting to cross, fell into the chasm when he stepped on the plank which he said turned under his foot. This court held that it was a question for the jury to determine whether the master had exercised care in providing such way, and an instruction for plaintiff which told the jury that the master must provide a safe place was condemned.

The judgment will be reversed, the verdict set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*