KIN LINVILLE *v.* CHESAPEAKE & OHIO RAILWAY COMPANY

(No. 7969)

Submitted November 14, 1934.  Decided December 4, 1934.

*Fitzpatrick, Brown & Davis* and *C. W. Strickling,* for plaintiff in error.

*Lilly & Lilly* and *Jacob D. Smith,* for defendant in error.

HATCHER, JUDGE:

Plaintiff was employed by defendant as section hand on one of its branch lines. He was injured in the discharge of his duties, and brought this action under the Federal Employers Liability Act to recover damages for his injury. From a verdict and judgment of $4,000.00 in his favor, defendant prosecutes error.

The accident occurred on December 15, 1932, when the ground was frozen. Four section men, including plaintiff, were cleaning brush, etc., off the right of way to facilitate mowing in the spring. The right of way at the place of injury sloped upward from 25° to 45°. On this slope, a log about thirty-five feet long and fifteen to twenty inches in diameter was lying at approximately a right angle to the roadbed, with its lower end eight or ten feet from the track. The section foreman instructed the men to move the log down the slope, cut it in two, and pile and burn it in the ditch beside the track. The men moved it a few feet and the lower end stuck in the ground. One of the plaintiff's fellow workmen then chopped it in two where it lay, while plaintiff cleared off brush nearby. When the log was severed, the lower half, in the language of the axeman, "dropped down on the ground * * * and it laid

a little bit apart." The two halves of the log were undisturbed for about an hour or more, during which time they remained motionless. When the task of moving them was resumed, plaintiff's fellow workmen started sluing the upper part of the lower half of the log round, so it could be rolled down the hill. After it had been moved several feet, the foreman directed plaintiff to aid in that work. As he joined the other workmen, the upper half of the log, without being jostled, suddenly slid down the hill and caught him between it and the lower half, bruising both legs and breaking a small leg bone.

The defendant stipulated that it transported interstate commerce.

The defendant's main contentions are that cleaning off a right of way is not such work as the Federal Act contemplates; that the defendant was not primarily negligent; and that the plaintiff assumed the risk of the log slide.

It is generally recognized that cleaning the rights of way safens the operation of trains. *Plass* v. *Ry. Co.*, 221 N. Y. 472, 117 N. E. 952. If so, that work facilitated interstate transportation. One Federal decision holds that the removal of refuse from near the track is as necessary as the repair of the track. *Miller* v. *Rr. Co.*, 58 F. (2d) 635, 637. See generally our own case of *McKee* v. *Ry. Co.*, 78 W. Va. 131, 133, 88 S. E. 616. It would seem that plaintiff's action is tenable under the Federal Act.

The Act does not confer a right of action for an injury in a case such as this, unless the master was negligent. *Scott* v. *Ry. Co.*, 100 W. Va. 88, 130 S. E. 98; *Seaboard* v. *Horton,* 233 U. S. 492, 58 L. Ed. 1062. There is no dispute in the material facts; so the question of negligence is one of law. *Ketterman* v. *Rr. Co.*, 48 W. Va. 606, 37 S. E. 683.

This is not a case of danger which should have been appreciated by an experienced foreman alone, as plaintiff's brief assumes. The plaintiff was a mature adult of some twelve years experience in section work, and was familiar with the general duties involved in cleaning off the right of way. The situation presented no complications.

No special skill or special information was requisite to determine whether or not the position of the log was secure. Any adult of ordinary discretion should have comprehended all of the potentialities of the situation. So far as it appears from the evidence, the plaintiff and his fellow workmen were men of ordinary intelligence. This is not a case, like some of plaintiff's citations, where the plaintiff yielded an apprehension of danger to the judgment of his superior, for he had no such apprehension. He testified that he had observed the position of the upper part of the log—that he could see it "just as well as anybody else * * * lying there loose on the hillside"; and that he "never even thought about it" being liable to roll. One of the other workmen testified "that the log looked to be safe" and he "didn't feel like there was any danger." Nothing in the evidence charges the foreman with knowledge that the situation was dangerous. The upper half of the log had remained immobile for more than an hour. There was no occasion for the men to touch it in moving the lower half. The agency which set it in motion was not visible. The danger was not manifest until the slip actually commenced. We must infer that the half looked as harmless to the foreman as to his men.

It is not possible for the master to direct every movement which his servant makes. In many instances, such as the one here, the servant is at liberty to select his own position at work, and the master is not at fault in expecting the servant in making the selection to exercise ordinary care for himself. The master does not insure the safety of his workmen. He is required to exercise only the care of an ordinary man to furnish them a safe working place. He is required to warn them only of danger he appreciates, or which he should have reasonably anticipated. *Smith* v. *Lumber Co.*, 71 W. Va. 749, 77 S. E. 330; Bailey Personal Injuries (2d Ed.), sec. 302. That statement of the master's responsibility has been phrased "a philosophic truth." 18 R. C. L., subject Master and Servant, sec. 62. That same authority says, section 173, "Ultimately the question becomes one of comparative knowledge." There is nothing in the evidence tending to

show that either plaintiff or his fellow workmen were less observant of danger than the ordinary man. All were experienced workmen. Their opportunity to sense the danger was equal to that of the foreman. If the situation disclosed no danger to them, as ordinary men, how can it be fairly said that the foreman (the master) was negligent in not discerning the danger? "The master is not compelled to foresee and guard against an accident which reasonable and prudent men would not expect to happen." *Griffin* v. *Rr. Co.,* 96 W. Va. 302, 122 S. E. 912. On the contrary, if it be urged that the danger was so obvious that the foreman should have seen it, then should not the workman have seen it too? If so, the law would impose on the plaintiff the risk of undertaking to work in a situation of obvious danger. The fact that the foreman directed the plaintiff to go to the place of the accident is not material under these circumstances. *Skidmore* v. *Railroad Co.,* 41 W. Va. 293, 23 S. E. 713.

Being of opinion that the evidence discloses no primary negligence on the part of the defendant, the judgment is reversed, the verdict set aside, and a new trial awarded the defendant.

*Judgment reversed; verdict set aside;*
*new trial awarded.*