Samuel SPAULDING, an infant under the age of 21 years, who institutes this suit by his father and next friend, Junior LeRoy Spaulding, and Junior LeRoy Spaulding, Appellants,

v.

ADS–ANKER DATA SYSTEMS—MID-WEST, INC., a corporation, Appellee.

Robert N. JOHNSON, Appellant,

v.

ADS–ANKER DATA SYSTEMS—MID-WEST, INC., a corporation, Appellee.

Nos. 73–1442, 73–1467.

United States Court of Appeals, Fourth Circuit.

Argued April 3, 1974.

Decided May 29, 1974.

**518**

Robert W. Lawson, III, Charleston, W. Va. (Rudolph L. Di Trapano and Di Trapano, Mitchell, Lawson & Field, Charleston, W. Va., on brief), for appellants.

John M. Slack, III, and Robert K. Kelly, Charleston, W. Va. (Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge.

In this diversity jurisdiction case we apply the law of West Virginia with respect to the duty of an employer to provide its employees with a reasonably safe place in which to work and reasona-

bly safe appliances and instrumentalities with which to perform their assigned duties. The district court entered summary judgment against complaining employees Johnson and Spaulding and in favor of their employer Ads-Anker Data Systems—Midwest, Inc. The question of whether the employer had, under the circumstances, a duty of ordinary care and failed to fulfill it was, we think, disposed of prematurely.[1] We reverse and remand for trial on the merits.

The employer (Anker) is a corporation selling and servicing cash registers. Johnson was employed as a salesman and Spaulding as a repairman. On June 18, 1970 they were traveling in Johnson's station wagon carrying cash registers on the rear deck. They alleged that as a result of a head-on collision with a truck the cash registers were propelled forward with such force that a "second collision" occurred that contributed substantially to the injuries which each sustained.

 It is well settled in the West Virginia law of master and servant that an employer is neither an "insurer," Linville v. Chesapeake & O. Ry. Co., 115 W.Va. 610, 177 S.E. 538, 539 (1934); Smith v. United Lumber Co., 71 W.Va. 749, 77 S.E. 330, 332 (1913), nor a "guarantor," Moll v. Bayha, 108 W.Va. 173, 150 S.E. 515, 518 (1929), of the

---

1. Summary judgment is particularly inappropriate in negligence actions, as Chief Judge Parker recognized in Pierce v. Ford Motor Co., 190 F.2d 910 (4th Cir.), cert. denied, 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666 (1951):

> It is only where it is perfectly clear that there are no issues in the case that a summary judgment is proper. Even in cases where the judge is of opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment, which was never intended to enable parties to evade jury trials or have the judge weigh evidence in advance of its being presented.

190 F.2d at 915. This is not, we believe, the "unusual case," Bland v. Norfolk and South-

ern R. R. Co., 406 F.2d 863 (4th Cir. 1969) where "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c).

The infrequent utility of motions for summary judgment in negligence cases has been documented by a study of Fourth Circuit cases by Guiher, Summary Judgments—Tactical Problems of the Trial Lawyer, 48 Va. L.Rev. 1263 (1962). Professors Wright and Miller note the result of the study:

> [B]etween 1938 and 1961 the Fourth Circuit dealt with 41 cases involving summary judgment but only four cases involved negligence actions and of the four, three resulted in the reversal of the trial court's grant of summary judgment.

C. Wright and A. Miller, 10 Federal Practice and Procedure: Civil § 2729, at 560 (1969).

safety of his employees. Equally well settled, however, is the following principle:

> Generally, it is a master's duty to provide his servants reasonably safe and suitable tools and appliances sufficient for the work intended, and the servant may assume that the master has performed that duty; and whether the master has been negligent in that duty is generally a question for the jury under all the facts and circumstances.

Walls v. McKinney, 139 W.Va. 866, 81 S.E.2d 901, 904 (1954); Estep v. Price, 93 W.Va. 81, 115 S.E. 861, 862 (1923). The standard of care to be exercised in the performance of this duty has been further delineated as that of "ordinary care and diligence . . . considering the character of the work in which he [the servant] is engaged." Barr v. Knotts, 101 W.Va. 440, 133 S.E. 114, 115 (1926).

 In concluding that there was no duty on the company's part to provide a protective cage or barrier for its employee's privately-owned vehicles, the district court emphasized that the vehicle was not only owned by the plaintiff-appellant [Johnson] "but also that the defendant did not maintain, inspect or control it in any way." The court added:

> The measure of the master's duty to the servant, in reference to affirmative action for his safety, depends upon the extent to which he is allowed the opportunity or has the means or power for his own protection.

We agree, *see* Walls v. McKinney, 139 W.Va. 866, 81 S.E.2d 901 (1954); 56 C. J.S. Master and Servant §§ 201, 210, but, except in a "perfectly clear" case, it is for the trier of fact to infer whether an employer has sufficient opportunity, means and power to control the dangerous conditions of an instrumentality of employment. Had appellants' injuries allegedly resulted from defective brakes or tires, summary judgment would have been appropriate, for, absent special contract, an employer ordinarily has no duty to inspect and no power to control the maintenance of an employee's automobile. The defect here alleged, however, is the failure to provide special equipment (cage or barrier) without which, it is said, the transporting of the employer's machines is dangerous. The alleged danger was not only known to the company but the evidence suggests that installation of a protective barrier was the custom of the trade.[2] Since both knowledge [3] of the danger and the possibility of control are arguably present, it is for the jury to say whether the company breached its duty of ordinary care in failing to provide a barrier or other safety device for Johnson's car.

 As to appellant Spaulding, the evidence before the district court on the

2. Q. Mr. Johnson, is there anything else you would like to add to this deposition?
A. Yes; I had a discussion with Mr. Winderweedle at one time about having cages put in their stationwagons, since one of the largest cash register companies require all of their personnel to have this equipment in all of their cars; and, of course, there wasn't anything ever came about.
Q. What did he say?
A. He just agreed with me that they actually should be there.
(Deposition of Robert Johnson).

3. The fact that both Johnson and Spaulding knew of the dangerous condition or that such a condition should have been obvious to them is of no avail to the company since "notwithstanding that the employee knew of the danger and with such knowledge used such machinery in the course of his employment, the master is liable." Walls v. McKinney, 139 W.Va. 866, 81 S.E.2d 901, 904 (1954). An employee's knowledge of the danger does not negate the existence of the employer's duty. Nor can the company, which is not a subscriber to the West Virginia Workmen's Compensation Fund, rely on the common law defenses of contributory negligence, assumption of risk or the fellow-servant rule. Art. 2, § 8 of Chap. 23, W.Va.Code effectively strips the company of such defenses. Walls v. McKinney, 139 W. Va. 866, 81 S.E.2d 901, 905–906 (1954); Trimble v. Steele, 110 W.Va. 170, 157 S.E. 166, 167 (1931).

motion for summary judgment reveals a further duty which may have been breached by the employer. In the taking of his deposition, Spaulding was asked how he happened to be in the Johnson car on the occasion of the accident. He responded: "I come in to work that morning, and *my boss told me to go with Mr. Johnson* to Cyclone to repair a machine." (Emphasis added). Even if it be assumed that the company had no control or supervision over the Johnson vehicle, it was "under a duty not to order its servants into an obviously dangerous place," Pritt v. West Virginia Northern R. Co., 132 W.Va. 184, 51 S.E. 2d 105, 115 (1948), cert. denied, 336 U.S. 961, 69 S.Ct. 891, 93 L.Ed. 1113 (1949),[4] or at least, knowing of the danger (as Johnson's deposition alleges), it was under a duty to warn Spaulding of the danger. Trimble v. Steele, 110 W.Va. 170, 157 S.E. 166, 167 (1931). Even if the duty to warn is negated when "[a]ny adult of ordinary discretion should have comprehended all of the potentialities of the situation," Linville v. Chesapeake & O. Ry. Co., 115 W.Va. 610, 611, 177 S.E. 538, 539 (1934), or when the danger "was as obvious to plaintiff as it was to defendant," Smith v. United Lumber Co., 71 W.Va. 749, 750, 77 S.E. 330, 331 (1913), still there may be a duty to warn a person of Spaulding's youth (19) and inexperience. *See* Shaw v. Hazel-Atlas Glass Co., 70 W.Va. 676, 74 S.E. 910, 911–912 (1912). "[Y]oung or inexperienced employees . . . must be given instructions suitable to their age, intelligence and knowledge, and to the risk to be encountered." W. Prosser, Handbook of the Law of Torts § 80, at 548 (3d ed. 1964).

The motion for summary judgment was, under these circumstances, improvidently granted since genuine issues as to material facts are presented by appellants' depositions. The judgment of the district court is reversed and the case is remanded for trial on the merits.

Reversed and remanded.

---

4. Even though the *Pritt* case was decided under the Federal Employers' Liability Act, its discussion of the employer's duty is applicable, especially since 45 U.S.C. §§ 53 and 54 deprive the employer of the defenses of assumption of risk and contributory negligence (partially) in a manner similar to the West Virginia Code in these circumstances.