# CHARLESTON.

## RUFUS ESTEP v. C. E. PRICE.

Submitted January 30, 1923.    Decided February 6, 1923.

1. MASTER AND SERVANT—*Common Law Defenses Not Available to Employer Within Compensation Act.*

   An employer within the terms of the workmans compensation act, who fails to avail himself of its protection, is not

liable for an injury sustained by an employee while in the performance of his duties unless the employer's negligence is the proximate cause of the injury. He is liable to the employee for negligence, but cannot interpose the common law defenses of fellow servant rule, assumption of risk, or contributory negligence as a defense. The negligence of a fellow servant from which the injury results makes the master liable. (p. 84).

2. TRIAL—*Motion to Direct Verdict Should be Guided by Court's Action if Motion For New Trial Made for Insufficient Evidence.*

In considering a motion to strike out plaintiff's evidence' and direct a verdict for defendant, the court should be guided by what its action would be if a verdict was returned for plaintiff, and a motion made for a new trial on the ground of insufficient evidence. (p. 84).

3. SAME—*All Inferences Which Jury Could Justifiably Draw From Plaintiff's Evidence Must be Included in Consideration of Motion to Direct Verdict for Defendant.*

In considering such motion plaintiff's evidence, together with all inferences which the jury could justifiably draw therefrom must be included, discarding all of defendants evidence in conflict therefith. (p. 84).

4. SAME—*Master Under Duty to Provide Reasonably Safe Appliances; Negligence in Furnishing Appliances Question for Jury.*

Generally, it is a master's duty to provide his servants reasonably safe and suitable tools and appliances sufficient for the work intended, and the servant may assume that the master has performed that duty; and whether the master has been negligent in that duty is generally a question for the jury under all the facts and circumstances. (p. 84).

(McGINNIS, JUDGE, absent).

Error to Circuit Court, Logan County.

Action by Rufus Estep against C. E. Price. From a judgment for defendant, plaintiff brings error.

*Reversed and remanded.*

*Chafin & Estep,* for plaintiff in error.

*Marcum & Shepherd,* for defendant in error.

Lively, Judge:

Plaintiff in error, Rufus Estep, prosecutes this writ of error to the ruling of the circuit court in his action for damages for personal injuries received while in the employ of defendant C. E. Price. At the conclusion of the evidence the court struck out all of plaitniff's evidence and directed a verdict for defendant, which was accordingly returned, upon which judgment of *nil capiat* was entered May 2nd, 1921.

The declaration contains two counts and sets out two causes of action. The first is that defendant failed to provide reasonably safe tools and appliances with which plaintiff and his fellow servants did defendant's work; and the second is that defendant was not reasonably careful in selecting and hiring competent and careful servants with whom plaintiff was required to work. Both counts averred that defendant, though an employer within the scope of the workmen's compensation law of the state, was not a subscriber to that fund and was not entitled to the protection afforded by that act, and could not avail himself of the common law defenses; namely, the fellow servant rule; assumption of risk; and contributory negligence.

Defendant was engaged in grading and constructing a county road, and employed defendant, with a number of other workmen, for that purpose. On the day of the injury plaintiff was engaged in constructing temporary houses for the workmen, and was directed by defendant to go a short distance and assist in felling a large elm tree which stood in the right of way, then being cleared. Accompanied by a fellow workman, Zarnes, he went to the tree where he says he found two other employees, Burks and Swann, engaged in sawing into the upper side of the tree with a cross cut saw. Plaintiff engaged in sawing with the cross cut saw, and Burks began to chop into the tree on the lower side, when the axe he was using slipped off the handle and struck plaintiff on the back of the hand severing some of the tendons, causing serious and possibly permanent injuries. This axe and its unsafe condition furnishes the central theme of controversy. It appears that defendant did not furnish the axe and did

not know it was there until the injury was received. It was owned by Justice, who lived three or four hundred yards away from the tree, where it was used by him in chopping wood and was kept in his corn crib. He, Justice, did not know by whom the axe was taken from his crib to the tree. It does not appear how the axe came there. None of the workmen at the tree knew, according to the record. It was double bitted, and no one seems to know whether it was loose on the handle, except from the fact that it slipped off while the chopping was in progress. Defendant did not know where the axe came from or how it got there. He had sent one of his workmen to borrow the cross cut saw and had taken or directed to be taken a small poleaxe from a steam shovel on the grade for the purpose of chopping the tree. He had ordered three new poleaxes for use in clearing the grade, which had not arrived.

There is some conflict in the evidence as to whether plaintiff and Zarnes took the defective axe to the tree with them, or whether it was already there when they arrived. Burks and Swann say that plaintiff and Zarnes were at the tree and were sawing when they arrived. As before stated, plaintiff and Zarnes say that Burks and Swann were doing the sawing when they arrived. There is much controversy over how the accident occurred. Some of the witnesses say that the sawing had ceased, the saw having become bound in the tree, and that plaintiff was reclining near the foot of the tree when the chopping was in progress and had been warned by Burks, the chopper, to get out of danger. Evidently the court struck out plaintiff's evidence on the theory that defendant had not furnished the double bitted axe, but that some of his employees had procured it without his instructions, and he was not responsible for its presence or defects.

Was the evidence sufficient to make out a case for the jury? This is the sole question for decision. The rules is fairly well stated as follows: "If in any possible view of the evidence, a verdict would be sustained in favor of plaintiff, the court may not instruct in favor of defendant, although the seeming preponderance of the evidence is with him." *White*

v. *Hoster Brewing Co.*, 51 W. Va. 259. If all of the inferences which the jury could justifiably deduce from the evidence are taken into consideration, and are not sufficient to sustain a verdict in favor of plaintiff, then a direction to find for defendant is proper. *Pleasants* v. *Fant,* 22 Wall. 116; 22 L. ed. 780. If there had been a verdict for plaintiff and a motion to set aside, the court would, in considering the motion, discard all of defendant's evidence in conflict with that of plaintiff's and then if such evidence together with all the justifiable inferences which the jury could reasonably draw therefrom, was sufficient to sustain the verdict, the motion to set aside would be refused. Likewise in considering a motion to strike out plaintiff's evidence and direct a verdict for defendant, the same rule applies, and all of defendant's evidence in conflict with that of plaintiff must be discarded. *Cobb* v. *Glenn Boom & Lbr. Co.*, 57 W. Va. 49, 49 S. E. 1005. It must be kept in mind that under the workmen's compensation act, an employee cannot recover against his employer for every injury he receives in the employment, where the employer fails to take the benefit of that act. There must be some negligence imputable to the master, some act or omission from which the injury resulted. The servant assumes the risks incident to his employment other than those induced by the master's negligence, notwithstanding the fact that the act precludes the master from reliance upon the common law defenses of assumption of risk, fellow servant rule, and contributory negligence. Non-compliance with the act leaves the master liable to the servant for common law negligence, and deprives him of the common law defenses stated.

To make a master liable for an injury to his servant by omission of some duty imposed upon him, the existence of a casual relation between such omission and the injury is necessary. "An employer who has not elected to bring himself within the provisions of the Michigan Workmen's Compensation Act, is not answerable for injury sustained by an employee, in the absence of some negligence on the part of the

former." *Lydman* v. *DeHaas*, 151 N. W. 718. See *Wilkins, Admr.* v. *Koppers* Co., 84 W. Va. 460, 1st. pt. syl.

Then, what duty unperformed by Price had a casual relation to Estep's injury? Counsel for Price, while admitting that the law requires a master to furnish reasonably safe tools and appliances, insist that he did not furnish the defective axe, and had no opportunity for selecting or inspecting it, and was not liable for the accident. As before indicated, in considering the case, we must discard from consideration all of defendant's evidence in conflict with plaintiff's evidence. Plaintiff and Zarnes found Burks and Swann at the tree which they had partially sawed on the upper side, and partially cut on the lower side. The tools were there, and being used by them. The tree was a large elm, three or four feet across the stump. The presumption would be that defendant had furnished the tools. Plaintiff was injured in the discharge of his duty in the master's business, and without any fault on his part in the manner detailed. Defendant knew nothing of the double bladed axe, how it got there or whence or by what agency it came; but the jury could reasonably infer that it was brought there by some one undisclosed who had authority to do so. Who was in immediate charge of the force of hands engaged in clearing the grade is not disclosed. Some preparation was made by some one for the cutting and removal of this large tree, and presumably by one in authority. The jury could also reasonably conclude that the small poleaxe which had been used on the steam shovel was not a sufficient tool with which to notch this large tree; that there was negligence in not supplying necessary and sufficient tools. The question of negligence on the part of the fellow servant Burks in using a defective tool, if he knew it was defective or should have known, was a jury question. The tree had a large notch cut into it on the lower side when plaintiff and Zarnes came to it. Whether it had been cut by Burks with the defective tool before their arrival or by some one else, and opportunity afforded to detect its looseness on the handle was a question which would address itself peculiarly to a jury. Burks and Swann, it

will be remembered, said they arrived at the tree after the plaintiff and Zarnes had done the preliminary work, and had partially sawed on the upper side and notched on the lower side, and never saw the axe until he, Burks, picked it up and began chopping, when the accident occurred. "The proximate cause of an injury is the last negligent act contributory thereto, and without which such injury would not have resulted." *Schwartz* v. *Shull,* 45 W. Va. 405. It is the duty of the master to furnish tools and appliances which are reasonably safe and suitable for their purpose, and the servant may assume that the master has performed that duty. 26 Cyc. 1100, 1101.

Assuming that plaintiff's evidence truly describes the accident and its cause, and assuming it to be true that defendant had no knowledge of the presence or use of the defective axe, the jury, under the circumstances surrounding the unfortunate incident, might reasonably infer and find that the master had neglected to furnish sufficient and reasonably safe and suitable tools for the purpose of cutting and removing the tree, and that a fellow servant was negligent in the performance of the master's work.

We are considering the case from the standpoint of plaintiff's evidence, discarding defendant's evidence in conflict therewith. Of course, it would be impossible to determine what would have been the verdict when all of the evidence was considered under proper instructions. But had a verdict been rendered under proper instructions, we do not perceive on what legal principle it could be set aside. The question of negligence on the part of the master, and on the part of the fellow servant, under all the facts and circumstances, was for the jury to determine.

The judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded..*