# CHARLESTON.

### JAMESON *v.* NORFOLK & W. RY. Co.

### Submitted May 29, 1924.   Decided September 9, 1924.

1.  AUTOMOBILES—*Care Required of Automobile Passenger.*

    The negligence of the driver of an automobile cannot be imputed to a passenger, but the passenger must use such reasonable care for his own safety as an ordinarily prudent person would exercise under like circumstances. (p. 123).

    (Railroads, 33 Cyc. p. 1015, p. 1017).

2.  SAME—*Automobile Passenger Must Use Reasonable Care to Observe Train.*

    It is the duty of a passenger of mature years and in full possession of his faculties, when approaching a public railway crossing in an automobile, to use reasonable care to observe an approaching train. (p. 123).

    (Railroads, 33 Cyc, p. 1017).

3.  SAME—*Automobile Passenger Held Guilty of Contributory Negligence.*

    When the facts proved clearly show that a passenger in an automobile, of mature years and in full possession of his faculties, was killed at a railway crossing by a train, and that decedent had full opportunity to see and hear the approaching train in time to warn the driver of the automobile, so as to enable him to avoid the injury or to enable the decedent himself to avoid the injury by the exercise of due care, and he neither warned the driver nor took any precaution for his own safety, the decedent was guilty of contributory negligence as a matter of law. (p. 123).

    (Railroads, 33 Cyc, p. 1121 [1926 Anno]).

    NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

Error to Circuit Court, McDowell County.

Action by Cabel Jameson, administrator, against the Norfolk & Western Railway Company. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Cecil H. Riley* and *F. C. Cook*, for plaintiff in error.

*F. M. Rivinus* and *Strother, Sale, Curd & Tucker*, for defendant in error.

MEREDITH, PRESIDENT:

Plaintiff, as administrator of the estate of Charlie Jameson, deceased, sued to recover damages for the wrongful death of his decedent, based upon defendant's alleged negligent operation of one of its trains at a highway crossing. After hearing the evidence on both sides of the case, the circuit court directed that the jury return a verdict for the defendant. To the judgment entered upon the directed verdict plaintiff prosecutes this writ of error.

The declaration alleges defendant's ownership and operation of an interstate railroad, extending through the county of McDowell in this state, and that said railroad crosses a state highway at a public crossing at Eckman in said county. It then alleges that on November 28, 1922, plaintiff's decedent was traveling on said highway in an automobile owned and operated by one, J. H. Taylor, and that defendant through its agents and employees, in charge of one of its trains, disregarding the duty imposed upon it by law to give proper warning signals, carelessly and without having given such signals, drove its train upon the crossing at a speed of thirty miles or more per hour, striking the automobile in which plaintiff's decedent was riding and which was being operated by said Taylor in a careful and prudent manner, and inflicted upon said decedent injuries from which he died instantly. Plaintiff claims damages in the amount of $3000.00.

Whatever the record may show the facts to be, there can be but one question for us to decide, that is, whether the evidence was sufficient to make out a case for the jury. And in reviewing the matter here, we are governed by the principle firmly established that in considering a motion to direct a verdict for defendant, all of defendant's evidence in conflict with that of plaintiff must be discarded. If when stripped of this conflict all of the inferences which the jury could justifiably deduce from the evidence are taken into consideration, and are not sufficient to sustain a verdict in favor of plaintiff, then a direction to find for defendant is proper. *Estep* v. *Price*, 93 W. Va. 81, 115 S. E. 861, and cases there cited.

What conclusions and inferences then can properly be drawn from plaintiff's evidence?

The driver of the car, Taylor, was but slightly injured, so it is upon his testimony that plaintiff chiefly relies. He testifies that he started from the town of McDowell between 8 and 9 o'clock in the evening, intending to drive to the Tidewater Works, near Kimball, a few miles west of McDowell. He carried some clothes with him, and testifies that he was in a rush to reach his destination. Decedent seems to have gone along to enjoy the ride. Having passed Northfork, they drove gently about two miles to the small town of Eckman; they drove over a winding road through that town, passed the railway station, and turned sharply to the right towards the main line right of way. Thence they turned to the left, paralleling the tracks for a distance, not shown in the testimony, but which we judge from the photographs introduced to be from fifty to one hundred feet, and having crossed a short concrete bridge, they turned again to the right at an angle of almost ninety degrees, from which angle they drove almost due north some forty or fifty feet to the crossing. They crossed the first or east-bound track in safety, but when full upon the second or west-bound track they were overtaken by one of defendant's fastest trains. The automobile, a Ford roadster, was demolished, and decedent received injuries from which he died shortly after.

As in all crossing cases, our attention is directed to the geographical situation, the speed of the train, the speed of the automobile, the warning signals given or not given by the train-men, and the caution exercised by the driver and occupant of the automobile, which latter circumstance involves also their opportunities for observing the approach of the train, whether those opportunities were taken advantage of or not.

The collision occurred about 10 o'clock. The sky was somewhat cloudy. Though very meagre as to specific details, the record reasonably shows that while driving through the town of Eckman the view of those in the automobile north in the direction of the railroad was generally obscured by buildings, but the photographs also show that from the time they made their turn to the left and paralleled the tracks for the dis-

tance we have estimated at fifty or one hundred feet, they had a free view of the railroad, which was but twenty-five or thirty feet away, in both directions, although it is to be remembered that the train which struck them was running in the same direction in which they were traveling and that necessarily it was in their rear, until they turned to the right after crossing the small bridge and approached the rails. The driver sat on the left side of the car, decedent on the right, the side from which the train approached. While on this small bridge just before the turn, decedent observed a flash of light from the rear, and told Taylor that an automobile was following them. Taylor replied: ''Well, we will wait and drive across and let them pass.'' About twenty feet from the tracks they slowed down practically to a standstill, Taylor looked and listened in both directions but observed no danger. He then put his car in low gear and entered upon the crossing at a speed of four or five miles per hour. He was not aware of the train's presence until his car was struck. He heard no warning signal of any kind. The trainmen admit they were running about thirty miles per hour.

As persons in their senses do not step or drive directly in front of fast moving trains, we readily credit Taylor's statement that he was not aware of his peril. The question then is whether he or decedent should have seen it, and whether plaintiff is to be barred from recovery for their failure to avoid the collision. Certainly men can not blind themselves to danger. As was said in *Reidel* v. *Wheeling Traction Co.,* 63 W. Va. 522, 61 S. E. 821:

> ''If the danger is so apparent that he must have seen it, if he exercised any care at all, or reasonable care, he will not be permitted to say that he did not see it,'' and,
>
> ''When the facts, clearly proven or admitted, are such that a person injured at such a crossing must have seen and heard the approaching car in time to have enabled him to avoid the injury, if he had looked and listened, his protest that he did not see or hear goes for naught.''

We have made observation of the fact that for a distance,

not made certain by the proof, decedent and Taylor rode parallel to the track and within twenty-five or thirty feet from it, with a clear view of approaching trains, if any. For how long a distance toward the approaching train they could have seen we do not know. The headlight of the locomotive cast its rays for half a mile, but it may not have come into view at the time decedent occupied this position. The train's speed was rapid, forty feet per second, decedent's was much less. When they shifted gears twenty feet from the track, and came near to a standstill, however, plaintiff's own proof shows that their view extended not less than twenty-four rail lengths toward the train, 792 feet. The brilliant headlight was clearly discernible at night. At their speed of four or five miles per hour, Taylor and decedent must have covered the twenty feet in three or four seconds. How then could the train, running forty feet per second, have been more than 120 or 160 feet distant when the travelers practically stopped and looked and listened at a distance of twenty feet from the rails? That it was considerably closer than the limit of their vision, 792 feet, can not be doubted. If Taylor looked, he did not see what it was his duty under the circumstances to observe, the rapidly approaching headlight and train.

For aught we know, decedent, who was in an even better position to see, being on the right side of the automobile, may not have looked at all. And while we pointed out in *Young v. Railway Co.*, 96 W. Va. 534, 123 S. E. 433, that a passenger in an automobile is not always negligent because he does nothing, that it is often his best course to remain silent rather than disturb the driver, and that the driver's negligence is not imputed to him, we also showed that he is not excused from the duty of acting for his own safety as a reasonably prudent person should do. As stated in a case there cited, he must not be "mere freight." But, on this point of the case, as on the other issues, plaintiff claims that decedent's conduct was for the jury to consider. We think not. How can we excuse either him or the driver for failing to observe the train which must have been in plain view, and in failing to make provision for their safety? They had no right to rely wholly and implicitly upon defendant's failure to sound

the warning. *Blackwood* v. *Traction Co.,* 96 W. Va. 1, 122, S. E. 359.

In none of our cases which hold that, the contributory negligence of the traveler is a matter for the jury do we find the palpable carelessness on his part shown by this record. More akin to it is our decision in *Cavendish* v. *Railway Company,* 95 W. Va. 490, 121 S. E. 498, where we set aside a verdict in plaintiff's favor.

Other persons, witnesses for plaintiff, who were in positions of perfect safety, and therefore under no duty to look out for the danger, saw the train's approach. "That one is injured at a railway crossing does not of itself prove that he is guilty of contributory negligence." *Casdorph* v. *Hines,* 89 W. Va. 448, 109 S. E. 774. But where, as here, there has been a gross disregard for one's personal safety, we could not sustain a recovery. We therefore affirm the judgment.

*Affirmed.*