MARTHA B. WILSON, *Administratrix*

**v.**

RICHARD E. EDWARDS, *et al.*

(No. 10513)

Submitted April 21, 1953. Decided July 14, 1953.

614

*Tusca Morris, A. Blake Billingslea,* and *Robert C. Morris,* for defendant in error.

*H. H. Rose, Jr., Furbee & Hardesty, Russell L. Furbee,* and *C. H. Hardesty, Jr.,* for plaintiffs in error.

HAYMOND, PRESIDENT:

In this action of trespass on the case, instituted in October, 1951, in the Circuit Court of Marion County by

the plaintiff Martha B. Wilson, Administratrix of the personal estate of William G. Wilson, to recover damages for the wrongful death of her husband William G. Wilson, a jury returned a verdict for $10,000.00 against the defendants Richard E. Edwards, Wayman W. Corbin and Leo Simmons and a directed verdict of not guilty against the defendant Bobby G. Fortney who was subsequently dismissed from the case. A motion by the defendants Edwards and Corbin to set aside the verdict and grant a new trial and a similar motion by the defendant Simmons were overruled and on January 23, 1952, judgment was entered in favor of the plaintiff against the defendants Edwards, Corbin and Simmons for the amount of the verdict with interest from December 18, 1951, the date of the verdict, and costs. To that judgment this Court granted a writ of error and supersedeas upon the petition of the defendants Edwards and Corbin. No application for a writ of error and supersedeas was made by the defendant Simmons within the time provided by law and as to him the judgment is not now subject to appellate review.

The case was tried upon the declaration of the plaintiff, which contains a single count, and separate pleas of not guilty filed by the defendants Edwards and Corbin. No plea was filed by the defendant Simmons or the defendant Fortney. After the jury was sworn and before the introduction of evidence, on motion of the defendants, a view by the jury was had of the scene of a collision between an automobile owned by the defendant Fortney and driven by the defendant Simmons and a truck owned by the defendant Edwards which had been previously parked by its driver, the defendant Corbin, on or near the edge of the improved portion of a secondary public highway in Marion County designated as Route No. 64 and known as the Pleasant Valley Road. In that collision which occurred shortly before midnight of September 1, 1951, the plaintiff's intestate sustained the injuries which resulted in his death. At the conclusion of the evidence in behalf of the plaintiff each

of the defendants moved the court to direct the jury to return a verdict in his favor, each of which motions the court overruled. Each of the defendants made similar motions at the conclusion of all the evidence. The court overruled all of these motions except the motion of the defendant Fortney which was sustained and, as already indicated, he was dismissed from the case.

The evidence bearing upon the material facts, except those which relate to the exact position of the truck and the condition of the driver of the automobile at the time of the collision, is not conflicting.

The collision between the truck owned by the defendant Edwards and the automobile owned by Fortney and driven at the time by the defendant Simmons occurred about eleven thirty o'clock on Saturday night September 1, 1951, on a secondary public highway designated as Route No. 64 which extends in a southerly direction from the City of Fairmont to the village of Benton's Ferry in Marion County. The improved portion of the road is of concrete construction and its straight sections are fourteen feet in width. The truck which was struck at the rear by the automobile, a 1941 Oldsmobile two door sedan weighing about 3,000 pounds, was placed by its driver, the defendant Corbin, on the right side of the road in the direction of Benton's Ferry about seven fifteen o'clock that evening at a point south of the southern end of a curve in the highway. Immediately north of the curve, which is approximately two hundred feet in length, the road is straight for a distance of from 1500 to 1600 feet. The truck, a 1948 Ford model, which was used to haul and dump coal, was twenty feet in length. Its weight was approximately 12,000 pounds. The width of the body of the truck was seven feet six inches and the distance between the outer edges of its dual tread rear wheels was eight feet. It was equipped with headlights, a rear light, and six small metal reflectors, two at the rear and two on each of its sides, but none of the lights was burning and no flares were placed in front or behind it at the time of the collision. The curve, which

is to the left in the direction of Benton's Ferry, is on a slight uphill grade which continues to the end of the curve and the improved part of the road throughout the length of the curve is fifteen feet and ten inches in width. The surface of the improved part of the road on the outer edge of the curve is several inches higher than the surface of the improved part of the road on the inner edge of the curve and the berm or the shoulder on the right side of the road at the southern end of the curve is level with the improved part of the road and is from ten to fifteen feet in width for a distance of slightly more than twenty feet. At the time of the collision the truck was parked, without lights, entirely or partly on this section of the berm. It had been left in that position by the defendant Corbin who, when the wreck occurred, had retired for the night and was in bed asleep in the residence occupied by him and his wife and which was located a short distance to the right and below the level of the road.

Prior to September 1, 1951, the defendant Simmons was employed at an industrial plant in Akron, Ohio, and had been residing in that city. The defendant Fortney, the owner of the Oldsmobile sedan, was also employed at the same plant and also resided in Akron. The wife and the children of the defendant Simmons had continued to reside near Fairmont, in Marion County, and the day before the wreck, he borrowed the automobile from Fortney for the purpose of coming to Fairmont and taking his family to Akron with him. He drove the automobile from Akron to Fairmont where he arrived during the morning of September 1, 1951. He was a brother-in-law of William G. Wilson and his brother John H. Wilson, Jr., and he spent a part of the day with them at the home of their father in Fairmont. While there he and the Wilsons arranged to meet later at the Air Corps Club in Fairmont where dances were held and intoxicating drinks were served. John H. Wilson, Jr., had a social engagement with a young woman and about seven thirty o'clock that evening he and she went together to the club, where

they were joined by Simmons and William G. Wilson about ten o'clock that night. There the four remained for about twenty minutes and while they were there Simmons had one mixed drink which contained whiskey and the young woman drank one glass of coca cola. John H. Wilson, Jr., stated that he had one drink at the Air Corps Club but he did not say what the drink was. It does not appear that William G. Wilson drank anything while he and his companions were at that place. After leaving the Air Corps Club they went in the automobile driven by Simmons to a restaurant located south of Fairmont on Route No. 64 known as Evening Inn. They stayed at that place for about thirty minutes and while there each of them drank one glass of beer. Their conduct there was quiet and orderly. When they left the restaurant a few minutes before the collision they intended to go south to Benton's Ferry and then to return to Fairmont by a different route.

After entering the automobile at the Evening Inn, Simmons, the driver, the young woman and John H. Wilson, Jr., occupied the front seat from left to right in that order and William G. Wilson occupied the right side of the rear seat. From the time they started from the Evening Inn until the time of the collision none of the occupants of the automobile made any objection to the manner in which Simmons was driving. As the automobile entered the northern end of the curve its right wheels were off the pavement and on the berm on that side of the road. The speed of the automobile was 35 or 40 miles per hour and it continued round the curve at that speed and with its right wheels on the berm at a distance of two to three feet from the right edge of the pavement until just before it reached and struck the truck. When it was almost to the truck Simmons suddenly steered it to the left and the front end cleared the truck but the rear section of the middle portion of its right side struck the rear end of the truck. The force of the collision mashed in the right side of the automobile at the right end of the rear seat and knocked the truck a few feet

forward, pushed the left rear dual tread wheels to within three, six, or eight inches of the edge of the improved part of the road, and inflicted fatal head and chest injuries to William G. Wilson which resulted in his death about eight hours later in a hospital in Fairmont to which he was taken soon after the wreck. After striking the truck the automobile veered further to the left and came to a stop with its rear wheels on the left edge of the road and its front end diagonally across the road a few feet south of the front end of the truck. John H. Wilson, Jr., and the young woman were thrown from the automobile. She was not injured and he suffered only a slight injury to one of his arms. Simmons, who was also uninjured, and the unconscious and fatally injured William G. Wilson, were still in the automobile when it ceased to move.

With respect to the exact location of the truck on the right side of the road the evidence is conflicting. As it is clearly established that it was placed and left on the traveled portion of the highway, however, it is not material whether it was wholly on the berm, as the defendants Edwards and Corbin contend, or whether the rear end extended upon or over the paved part of the road. In either position at night, without lights or warning flares, it endangered the safety of motorists using the highway. Two deputies of the sheriff of Marion County who visited the scene within a few minutes after the collision testified that the truck was entirely on the berm with the left front wheel about three feet, and the left rear dual tread wheels about six or eight inches, from the right edge of the improved part of the road. Another witness who saw it after the wreck testified that it was entirely on the berm and two or three feet from the right edge of the improved portion of the road. The defendant Corbin, who said he placed the truck at seven fifteen o'clock where it was when the collision occurred, and other witnesses who saw it there before the wreck, testified that it was entirely on the berm and that its left wheels were parallel with and about two, two and one

half, three, or four feet from the right edge of the improved part of the road. One witness, produced by the plaintiff, and the defendant Simmons testified that the rear end of the body of the truck extended upon and over the concrete pavement of the road but neither of them stated how far it so extended.

Concerning the condition of Simmons, the driver of the automobile, the two deputies testified that he was intoxicated when they came to the scene of the wreck and that because of his condition he was there placed under arrest. Though he admitted that he had drunk one glass of beer and a mixed drink which contained whiskey within a period of less than two hours before the collision, he denied that he was intoxicated or under the influence of liquor, and a witness who observed him and his three companions at the Evening Inn and talked to him shortly after the collision testified that he did not appear to be under the influence of liquor.

By their assignments of error the defendants Edwards and Corbin seek reversal of the final judgment of the circuit court on substantially these grounds: (1) The conduct of the defendant Corbin in parking the truck where it was at the time of the collision without lights or warning flares and the conduct of the defendant Simmons in driving the automobile into the rear of the truck were not concurrently the proximate cause of the injuries sustained by plaintiff's intestate, but the conduct of the defendant Simmons, as an independent intervening agency, was the proximate cause of such injuries; (2) William G. Wilson was guilty of negligence which was the proximate cause of his death; (3) Instructions Nos. 1, 2, 8, 9 and 14, offered by the defendants and refused by the trial court, should have been given; (4) Instruction No. 11, offered by the plaintiff and, as amended, given by the trial court, should have been refused; and (5) the action of the defendant Corbin in placing the truck in the position occupied by it at the time of the collision was not within the scope of his employment by, and was not binding upon, the defendant Edwards.

To support their contention that the conduct of the defendant Corbin in placing and leaving the truck in the position in which it was at the time of the collision, without lights or flares, was not the proximate cause of the injury to plaintiff's intestate and that the proximate cause of his injury was the negligence of the defendant Simmons in driving the automobile against the stationary truck which, as an intervening independent act, superseded any negligence of the defendant Corbin, the defendants Edwards and Corbin cite and rely upon the cases of *Webb* v. *Sessler*, 135 W. Va. 341, 63 S. E. 2d 65; *Anderson* v. *Baltimore and Ohio Railroad Company*, 74 W. Va. 17, 81 S. E. 579, 51 L. R. A., N. S., 888; *Snyder* v. *Philadelphia Company*, 54 W. Va. 149, 46 S. E. 366, 63 L. R. A. 896, 102 Am. St. Rep. 941; *Stuck* v. *Kanawha and Michigan Railway Company*, 76 W. Va. 453, 86 S. E. 13; and *Estep* v. *Price*, 93 W. Va. 81, 115 S. E. 861.

In the *Webb* case the plaintiff sued an airplane pilot, the owner and the lessees of an airport, the operator of an airport, and the operator of a flying school conducted on the airport, for injuries received by plaintiff's intestate while sitting in an automobile on a highway near the airport when the pilot caused the airplane to strike the automobile. This Court held that the negligence of the pilot in attempting to land the airplane before attaining a safe altitude was the proximate cause of the fatal injuries sustained by plaintiff's intestate and, as the effective intervening cause of the injuries, superseded the alleged negligence of the other defendants in the maintenance and the operation of the airport in close proximity to the public highway.

In the *Anderson* case the declaration charged that the defendant, a railroad company, as a common carrier and the operator of a switch from its main line to a coal mine, furnished the coal company a railroad car for use in transporting coal which, because of defective brakes, escaped from the employees of the coal company, ran down an incline, and collided with and injured the property of the plaintiff. The defect alleged was that the

brake with which the car was equipped was not sufficient to enable the employees of the coal company to check and control its movements in placing it at the tipple from which it was to receive coal for shipment. It appeared that both the railroad company and the coal company knew that the brake was defective, that the railroad company in placing the car secured it by brake and by blocks, and that it remained in that position until employees of the coal company, in attempting to adjust it to the tipple, negligently permitted it to escape and collide with the property of the plaintiff. This Court held that as the coal company accepted the car for use at its mines, knowing it to be inadequately equipped with brakes and, in an effort to adjust it to its tipple to receive its complement of coal, negligently permitted it to escape and injure the property of the plaintiff, the railroad company was not liable for the injury even though it may not have occurred if the car had been equipped with brakes which were adequate to control its movements. Under the facts in that case the negligence of the coal company was the effective intervening cause which superseded the negligence of the railroad company and was the proximate cause of the injury.

The factual situations in the *Webb* and the *Anderson* cases were materially different from the facts here involved and the doctrine of those cases is inapplicable to the case at bar.

In the *Snyder, Stuck,* and *Estep* cases no intervening act occurred to supersede the operation of the negligence of the defendant and in each instance the negligence of the defendant was regarded as the proximate cause of the injury of which the plaintiff complained.

The North Carolina case of *Beach* v. *Patton,* 208 N. C. 134, 179 S. E. 446, also cited by the defendants Edwards and Corbin, is clearly distinguishable from the present case. In that case one of the defendants, Riddick, after colliding with another automobile, placed the automobile driven by him on the side of the highway where it re-

mained for approximately fifteen minutes. While it was in that position, another defendant, Patton, to avoid it drove his automobile upon and fatally injured plaintiff's intestate who was standing upon the shoulder of the road opposite the Riddick automobile. The court held that Riddick in placing his automobile where he placed it could not reasonably anticipate that Patton, to avoid a collision, would injure plaintiff's intestate on the opposite shoulder of the road; that Riddick's act was not the proximate cause of the injury; and that the conduct of Patton in operating his automobile was a new and independent cause which broke any sequence between the death of plaintiff's intestate and the parking of the automobile by Riddick. In the opinion the court used this quotation from the case of *Osborne* v. *Atlantic Ice and Coal Company,* 207 N. C. 545, 177 S. E. 796: "The law only requires reasonable foresight, and when the injury complained of is not reasonably foreseeable, in the exercise of due care, the party whose conduct is under investigation is not answerable therefor. Foreseeable injury is a requisite of proximate cause, and proximate cause is a requisite for actionable negligence, and actionable negligence is a requisite for recovery in an action for personal injury negligently inflicted."

The contention of the defendants Edwards and Corbin that the conduct of the defendant Simmons in operating the automobile in which plaintiff's intestate was riding as a guest and in causing it to strike the truck was an intervening cause which was the proximate cause of his death is not tenable. To be an intervening cause of an injury the negligent act or omission must be a new effective cause which, operating independently of anything else, becomes the proximate cause of the injury. 13 M. J., Negligence, Section 23; *Chesapeake and Ohio Railway Company* v. *Crum,* 140 Va. 333, 125 S. E. 301.

In the instant case it is clear, from the evidence, that the conduct of the defendant Corbin, in placing the truck on the berm in close proximity to the right edge of the

improved portion of the road near the south end of the curve at night, without lights or warning flares, and the conduct of the defendant Simmons in driving the automobile at a speed of thirty five or forty miles per hour with the right wheels upon the berm under conditions which did not enable him to discover the position of the truck in time to avoid striking it together caused the injuries which resulted in the death of plaintiff's intestate. Each of those defendants was guilty of negligence which continued until the moment of the collision and concurred in point of time and place to produce the fatal injuries of which the plaintiff complains. It is true that the act of the defendant Corbin in placing the truck where he left it at night without lights or warning flares would not have resulted in injury to plaintiff's intestate if the defendant Simmons had not driven the automobile in which plaintiff's intestate was riding as a guest against the truck, and it is likewise true that the act of the defendant Simmons in driving the automobile round the curve with its right wheels on the berm at a speed of thirty five or forty miles per hour would not have resulted in injury to plaintiff's intestate if the truck had not been placed as and where it was placed by the defendant Corbin; but these acts of the defendants operating together constituted one single and complete transaction and were the direct and efficient cause of the collision. "Where two or more persons are guilty of negligence, which in point of time and place concur, and together proximately cause or contribute to the injury of another, they are guilty of concurrent negligence for which, in an action by the injured party or, in case death results therefrom, by his personal representative, recovery against them may be had." Point 2, syllabus, *Sigmon* v. *Mundy*, 125 W. Va. 591, 25 S. E. 2d 636. *Richmond Coca-Cola Bottling Works* v. *Andrews*, 173 Va. 240, 3 S. E. 2d 419; *Yonker* v. *Williams*, 169 Va. 294, 192 S. E. 753; *Price* v. *Burton*, 155 Va. 229, 154 S. E. 499.

In placing and leaving the truck in the position where it was at the time of the collision, under the conditions

which then existed, as disclosed by the evidence, the defendant Corbin violated the provisions of Subsection (b), Section 15, Article 15, Chapter 17C, Chapter 129, Acts of the Legislature, 1951, Regular Session, and also the duty imposed upon him by law not to place the truck in a position which would likely cause injury to persons entitled to drive upon the highway and, as the position of the truck, under the conditions existing at the time of the collision, proximately caused or contributed to the injury sustained by plaintiff's intestate, the act of the defendant Corbin in so placing and leaving the truck constituted actionable negligence. The act of the defendant Simmons in rounding the curve at a high rate of speed with the wheels of the automobile on the berm when he was unable to see the truck in time to avoid striking it, which likewise proximately caused or contributed to the injury sustained by plaintiff's intestate, also constituted actionable negligence. Whether the negligence of two or more persons is concurrent, and taken together proximately causes or contributes to the injury of another person is, as to all matters of fact, a question for jury determination and a verdict of a jury based upon facts will not be disturbed if it is supported by substantial evidence. *Sigmon* v. *Mundy*, 125 W. Va. 591, 25 S. E. 2d 636. Separate and distinct negligent acts by two or more persons constitute the proximate cause of an injury when they continue in unbroken sequence until the injury occurs and directly and immediately contribute to and are the efficient cause of the injury. *Brewer* v. *Appalachian Constructors*, 135 W. Va. 739, 65 S. E. 2d 87. See also *Tawney* v. *Kirkhart*, 130 W. Va. 550, 44 S. E. 2d 634. By its verdict the jury found that the defendants Corbin and Simmons were guilty of negligence, that such negligence was concurrent, and that such concurrent negligence was the proximate cause of the injuries which resulted in the death of plaintiff's intestate. That finding of the jury is amply supported by the evidence and it will not be disturbed by this Court.

The contention of the defendants Edwards and Corbin

that plaintiff's intestate, William G. Wilson, was guilty of negligence that proximately caused or contributed to his fatal injuries is not supported by the evidence. It is true that he voluntarily rode in the automobile, as the guest of the driver, Simmons, from the Air Corps Club to the Evening Inn after Simmons had drunk one mixed drink which contained whiskey; that he also voluntarily rode in the automobile, as such guest, from the Evening Inn to the place of the collision shortly after Simmons had also drunk one glass of beer; and that he made no objection or voiced no protest against the manner in which Simmons drove the automobile at any time prior to the collision. The evidence, however, does not disclose that Simmons operated the automobile in any unusual, improper, or careless manner until he entered the northern end of the two hundred foot curve at or near the southern end of which the collision occurred. It is evident that he drove the automobile for a period of several minutes in going from the Air Corps Club to the Evening Inn and it may be fairly assumed that nothing out of the ordinary or that would call for any protest from any of his three companions happened during that part of the trip and that he operated the automobile between the Air Corps Club and the Evening Inn safely and without mishap.

The young woman, who was riding in the middle of the front seat, though looking, did not see the truck before the collision or observe whether the automobile was on the paved portion of the road or the berm or experience any fear because of the manner in which the automobile was driven. John H. Wilson, Jr., the brother of plaintiff's intestate, who was sitting on the right side of the front seat and apparently directly in front of his brother, testified that in going from the Evening Inn to the place of the collision Simmons was driving "very good"; that he was not "speeding"; that he "couldn't tell" whether the automobile when rounding the curve was off the pavement; that he saw the lights of an automobile ahead approaching from the opposite direction; that he did not notice

the truck which suddenly appeared as a black object or black shape "sticking out in the road" until just before the collision; and that the collision "seemed like a matter of seconds, it happened so fast." Simmons testified that in rounding the curve he might have gone "off the pavement"; that he saw the lights of another automobile ahead approaching from the opposite direction; that he "steered to the right to give plenty of clearance for the other car"; and that between the time he first saw the truck and the time of the collision "only a few seconds" elapsed.

If none of the occupants of the front seat of the automobile, who were looking forward, saw the truck until only a few seconds before the collision and if none of them was sure that the automobile was off the pavement it is difficult to see how plaintiff's intestate, who was sitting on the right side of the rear seat directly behind his brother, could have seen the truck in time to have warned the driver of its presence or to have realized the dangerous position of the automobile and utter any effective protest. If the speed of the automobile at the time it entered the curve and continued round it was thirty five or forty miles per hour as testified to by both Simmons and John H. Wilson, Jr., it was traveling between fifty one and fifty nine feet per second and it went from the northern end of the curve to the point of the collision in less than five seconds. In the circumstances disclosed by the uncontroverted testimony of Simmons and John H. Wilson, Jr., that neither of them saw the truck until a few seconds before the collision, it is obvious that plaintiff's intestate, if he saw the truck at all, did not see it in time to warn the driver of its presence or to enable him to avoid striking it or to register an effective protest against the manner in which the automobile was being driven or the speed at which it was traveling.

As to the condition of Simmons at and immediately before the time of the collision it is reasonably clear that none of his three companions thought he was intoxicated

or under the influence of liquor or that his ability to drive the car was in any wise affected or impaired by the two drinks which he took between ten o'clock and the time of the wreck about an hour and a half later. Though the two deputies who arrived at the scene of the wreck within a few minutes after the collision happened testified, as witnesses called by plaintiff, that Simmons was intoxicated their testimony on that point is controverted by the testimony of another witness, produced in behalf of the plaintiff, who observed Simmons at the Evening Inn and also saw and talked with him shortly after the collision and who testified that he was not intoxicated. Whatever may have been his actual condition it is reasonably clear, from the evidence, that if he was intoxicated his intoxication was not apparent to plaintiff's intestate at any time before the collision.

It can not be said, as a matter of law, that Simmons was intoxicated by the two drinks which he took before the collision and, if his condition was not that of apparent intoxication at the time he left the Evening Inn, shortly before the collision, plaintiff's intestate was not guilty of contributory negligence as a matter of law in voluntarily entering the automobile at that place and in remaining in it until the collision occurred. *Gilmore* v. *Huntington Cab Company,* 124 W. Va. 469, 21 S. E. 2d 137. In the *Gilmore* case this Court said in point 2 of the syllabus: "A passenger in a taxicab, driven by an admittedly intoxicated driver at the time when such passenger is injured, is not guilty of contributory negligence as a matter of law where the record does not show that the driver was apparently intoxicated when the passenger entered the cab, although the evidence shows that, prior to such entry, the passenger and driver together engaged in drinking intoxicating beverages."

In an action to recover damages for personal injury or wrongful death the questions of negligence and contributory negligence are for the jury when the evidence is conflicting or when the facts, though undisputed, are

such that reasonable men may draw different conclusions from them. *Daugherty* v. *Baltimore and Ohio Railroad Company,* 135 W. Va. 688, 64 S. E. 2d 231; *Davis* v. *Pugh,* 133 W. Va. 569, 57 S. E. 2d 9; *Yuncke* v. *Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Taylor* v. *City of Huntington,* 126 W. Va. 732, 30 S. E. 2d 14; *Lindsey* v. *Bluefield Produce Company,* 91 W. Va. 118, 112 S. E. 310; *Ewing* v. *Lanark Fuel Company,* 65 W. Va. 726, 65 S. E. 200, 29 L. R. A., N. S., 487. Here the question whether plaintiff's intestate was guilty of negligence which proximately caused or contributed to his injury was submitted to the jury under proper instructions. By its verdict the jury necessarily found that he was not negligent and, as that finding is not clearly wrong, or not contrary to the weight of the evidence, or not without evidence to support it, it will not be disturbed by this Court. *Thrasher* v. *Amere Gas Utilities Company,* 138 W. Va. 166, 75 S. E. 2d 376; *Guyandotte Coal Company* v. *Virginian Electric and Machine Works,* 94 W. Va. 300, 118 S. E. 512; *Griffith* v. *American Coal Company,* 78 W. Va. 34, 88 S. E. 595; *Bosley* v. *Baltimore and Ohio Railroad Company,* 54 W. Va. 563, 46 S. E. 613, 66 L. R. A. 871.

The third ground on which the defendants Edwards and Corbin seek reversal of the final judgment of the circuit court relates to the action of that court in refusing to give Instructions Nos. 1, 2, 8, 9 and 14 offered by those defendants.

Instruction No. 1, a peremptory instruction, would have directed the jury to find a verdict for both defendants and Instruction No. 2, also a peremptory instruction, would have directed the jury to find a verdict for the defendant Edwards. As the questions whether either or both of these defendants, or the plaintiff's intestate, was guilty of negligence were, under the evidence, for the determination of the jury, both instructions were properly refused by the trial court.

Instruction No. 8 would have told the jury that if the jury believed from the preponderance of the evidence

that plaintiff's intestate was a passenger in the automobile involved in the collision it was the duty of plaintiff's intestate, as a reasonably prudent person, to look for and observe any danger which the driver of the automobile might fail to see and observe and to take such steps, by warning or otherwise, which plaintiff's intestate as a reasonably prudent person might be able to take, to prevent the driver of the automobile from driving it at such speed or in such manner as to cause the collision with the parked truck; and that if the jury believed from the evidence that the accident was the result of the failure of plaintiff's intestate to look for and observe the parked truck and to take such steps, by warning or otherwise, to prevent the driver of the automobile from colliding with the parked truck, and that as a result of any failure of plaintiff's intestate to look for and observe the presence of the parked truck the collision occurred, and but for such failure upon the part of plaintiff's intestate the collision would not have occurred, plaintiff's intestate was guilty of negligence and the plaintiff could not recover. As already pointed out it does not appear from the evidence that plaintiff's intestate had any reasonable opportunity to warn the driver of the automobile of the presence of the truck in time to enable him to avoid striking it or that the collision was the result of the failure of plaintiff's intestate to observe the presence of the truck or that the collision would not have occurred if plaintiff's intestate had observed the presence of the truck and given warning of that fact to the driver of the automobile. The instruction assumes the existence of facts which are not embraced in or established by the evidence and for that reason it is not based upon or supported by the evidence. Instructions must be based upon the evidence and an instruction which is not sustained by evidence should not be given. *Thrasher* v. *Amere Gas Utilities Company,* 138 W. Va. 166, 75 S. E. 2d 376; *Ballengee* v. *Whitlock,* 138 W. Va. 58, 74 S. E. 2d 780; *Cato* v. *Silling,* 137 W. Va. 694, 73 S. E. 2d 731; *Kap-Tex, Inc.,* v. *Romans,* 136 W. Va. 489, 67 S. E. 2d 847; *Thomason* v. *Mosrie,* 134 W. Va. 634, 60 S. E. 2d 699; *Chesa-*

*peake and Ohio Railway Company* v. *Johnson*, 134 W. Va. 619, 60 S. E. 2d 203; *Davis* v. *Pugh,* 133 W. Va. 569, 57 S. E. 2d 9; *State* v. *Humphreys,* 128 W. Va. 370, 36 S. E. 2d 469; *Neal* v. *City of Bluefield,* 105 W. Va. 201, 141 S. E. 779; *Morgan Lumber and Manufacturing Company* v. *Surber,* 104 W. Va. 308, 140 S. E. 12; *Roberts* v. *Lykins,* 102 W. Va. 409, 135 S. E. 388; *Wilson* v. *McCoy,* 93 W. Va. 667, 117 S. E. 473; *Williams* v. *County Court of Lincoln County,* 90 W. Va. 67, 110 S. E. 486; *Penix* v. *Grafton,* 86 W. Va. 278, 103 S. E. 106; *Bond* v. *National Fire Insurance Company,* 77 W. Va. 736, 88 S. E. 389.

Instruction No. 9 would have told the jury that the law placed upon every person the duty to take such precaution for his own safety as a reasonably prudent person would take under like circumstances and conditions; that failure to do so constitutes negligence in law; and that if the jury should find from the preponderance of all the evidence that plaintiff's intestate continued to ride in the automobile driven by Simmons after he discovered, or by the exercise of ordinary care should have discovered, that Simmons was either under the influence of intoxicants or was driving the car in a negligent and careless manner, without protest or without making any effort to leave the automobile after having an opportunity to do so following such discovery, and that a reasonably prudent person under such circumstances would have taken such precaution for his safety, plaintiff's intestate would be guilty of negligence; and that if the jury should further find that such negligence contributed in any degree to the collision which caused the death of plaintiff's intestate, the plaintiff could not recover and the jury should find all the defendants not guilty. Instruction No. 9, like Instruction No. 8, assumed the existence of facts which were not shown or established by the evidence and for that reason it was properly refused: *American Canning Company* v. *Flat Top Grocery Company,* 68 W.Va. 698, 70 S.E. 756; *Cobb* v. *Dunlevie,* 63 W. Va. 398, 60 S. E. 384. There is no evidence to show that Simmons was noticeably or apparently intoxicated before the collision or that the two drinks which he had taken

affected or impaired his ability to operate the automobile or that plaintiff's intestate had any reason to believe that Simmons was intoxicated and for that reason incapable of driving the automobile in a proper manner. The instruction also assumes, contrary to the evidence, that plaintiff's intestate had an opportunity to leave the automobile after Simmons began to drive it in a careless or negligent manner which, as far as the evidence discloses, he did not do until he entered the northern end of the curve less than five seconds before the collision occurred. In that respect the instruction is also misleading and was properly refused for that reason.

The defendants Edwards and Corbin insist that under the holdings of this Court in the cases of *Young* v. *Wheby*, 126 W. Va. 741, 30 S. E. 2d 6, 154 A. L. R. 919; *Broyles* v. *Hagerman*, 116 W. Va. 267, 180 S. E. 99; *Adams* v. *Hutchinson*, 113 W. Va. 217, 167 S. E. 135; *Clise* v. *Prunty*, 112 W. Va. 181, 163 S. E. 864; *Herold* v. *Clendennen*, 111 W. Va. 121, 161 S. E. 21; *Lewellyn* v. *Shott*, 109 W. Va. 379, 155 S. E. 115; *Pierce* v. *Baltimore and Ohio Railroad Company*, 99 W. Va. 313, 128 S. E. 832; *Jameson* v. *Norfolk and Western Railway Company*, 97 W. Va. 119, 124 S. E. 491; and *Young* v. *White Sulphur and Huntersville Railroad Company*, 96 W. Va. 534, 123 S. E. 433, all of which they cite, Instructions Nos. 8 and 9, requested by them, should have been given. That contention is devoid of merit. In some of those cases the plaintiff, a guest, sued his host and in others the guest or his personal representative sued a railroad company to recover for injuries received by the plaintiff or his intestate. In each of those cases, however, in which the defense that the guest was guilty of negligence which proximately caused or contributed to the injury was sustained, it sufficiently appeared from the evidence that the guest was aware of the danger and had full opportunity to avoid it or, by giving timely warning or making timely protest, to enable the driver of the automobile to do so, or that the guest knew or should have known that to continue to ride in the automobile,

after an opportunity to leave it, endangered his own safety. In each such instance the guest, with knowledge of the danger and full opportunity to act to avoid it, failed to exercise the care of an ordinarily prudent person for his own safety and his failure to do so proximately caused or contributed to the injury. As already pointed out the evidence does not show that plaintiff's intestate had knowledge of the danger or a fair opportunity either to give the defendant Simmons warning of its existence in time to prevent the collision or to leave the automobile in time to escape the fatal injuries which he received; and for that reason the holdings in the cases just cited are inapplicable and are not controlling in the case at bar.

The two Instructions, Nos. 8 and 9, were also properly refused for the additional reason that even if they had been based upon the evidence the question whether plaintiff's intestate, while riding in the automobile, was guilty of negligence which proximately caused or contributed to his injury, which the instructions would have submitted to the jury, was fairly submitted to it by Instruction No. 7 which was offered by the defendants Edwards and Corbin and given by the trial court. The duplication of instructions is neither necessary nor desirable. *Thrasher* v. *Amere Gas Utilities Company*, 138 W. Va. 166, 75 S. E. 2d 376; *Bailey* v. *DeBoyd*, 135 W. Va. 730, 65 S. E. 2d 82; *Kelly* v. *Rainelle Coal Company*, 135 W. Va. 594, 64 S. E. 2d 606; *Davis* v. *Pugh*, 133 W. Va. 569, 57 S. E. 2d 9; *Franklin* v. *Pence*, 128 W. Va. 353, 36 S. E. 2d 505; *Robertson* v. *Hobson*, 114 W. Va. 236, 171 S. E. 745; *State* v. *Thomas*, 110 W. Va. 192, 157 S. E. 162; *Drake* v. *Clay Hardware & Supply Company*, 110 W. Va. 63, 157 S. E. 35; *State* v. *Bowles*, 109 W. Va. 174, 153 S. E. 308; *State* v. *Peoples*, 106 W. Va. 262, 145 S. E. 389.

Instruction No. 14 would have told the jury that though the jury should believe that the defendant Corbin was "guilty of negligence and that he violated a statute or statutes" of this State in parking the truck at the place shown by the evidence, his negligence in violating the

statute was not alone sufficient to render him liable unless the jury also believed that his negligence in parking the truck in violation of the statute was the proximate cause of the collision. To sustain a recovery for the negligent violation of a statute or an ordinance such negligence must be the proximate cause of the injury. *Jones* v. *Virginian Railway Company,* 115 W. Va. 665, 177 S. E. 621; *Ambrose* v. *Young,* 100 W. Va. 452, 130 S. E. 810. The instruction, to the extent that it deals with the negligence of the defendant Corbin in violating the statute, correctly states the law as recognized and applied by this Court in numerous decisions and, if it had not also contained the statement that though the jury should believe that the defendant Corbin was "guilty of negligence" and had dealt merely with the question of his liability for negligence in violating the statute, it would have been correct and should have been given. In placing the truck on or near the highway at night, without lights, however, the defendant Corbin not only violated the statute but he also violated the duty imposed upon him by law, independently of the statute, not to place the truck in a position on or near the highway which would likely endanger or cause injury to persons entitled to travel upon it. *Divita* v. *Atlantic Trucking Company,* 129 W. Va. 267, 40 S. E. 2d 324; *Cooper* v. *Teter,* 123 W. Va. 372, 15 S. E. 2d 152. Having stated generally that if the jury believed that the defendant Corbin was guilty of negligence, the instruction was incomplete in omitting any reference to the liability of the defendant Corbin in disregarding the duty imposed upon him independently of the statute and in failing to inform the jury that his negligence in violating that duty would render him liable only if such negligence was the proximate cause of the injury sustained by plaintiff's intestate. Refusal of an incomplete instruction is not error. *Smith* v. *The City of Bluefield,* 132 W. Va. 38, 55 S. E. 2d 392. Being incomplete in the particulars indicated, the instruction would have tended to leave the impression with the jury that the only ground of negligence on which the defendant Corbin

could be held to be liable was his negligence in violating the statute and in that way it would have misled or confused the jury. An instruction which tends to mislead the jury is erroneous and should be refused. *Gilkerson* v. *Baltimore and Ohio Railroad Company,* 129 W. Va. 649, 41 S. E. 2d 188; *Wilson* v. *City of Elkins,* 86 W. Va. 379, 103 S. E. 118; *Bartley* v. *Western Maryland Railway Company,* 81 W. Va. 795, 95 S. E. 443; *Chambers* v. *Spruce Lighting Company,* 81 W. Va. 714, 95 S. E. 192; *Brogan* v. *Union Traction Company,* 76 W. Va. 698, 86 S. E. 753; *Laraway* v. *Croft Lumber Company,* 75 W. Va. 510, 84 S. E. 333; *Walker* v. *Strosnider,* 67 W. Va. 39, 67 S. E. 1087, 21 Ann. Cas. 1; *Stewart* v. *Doak Brothers,* 58 W. Va. 172, 52 S. E. 95; *Parrish* v. *City of Huntington,* 57 W. Va. 286, 50 S. E. 416; *Henry* v. *Davis,* 7 W. Va. 715. The instruction in its incomplete form does not correctly propound the law applicable to the case and for that reason it was properly refused. An instruction which does not correctly state the law is erroneous. *Moore* v. *Turner,* 137 W. Va. 299, 71 S. E. 2d 342; *Thomason* v. *Mosrie,* 134 W. Va. 634, 60 S. E. 2d 699; *Gilkerson* v. *Baltimore and Ohio Railroad Company,* 129 W. Va. 649, 41 S. E. 2d 188; *Parrish* v. *City of Huntington,* 57 W. Va. 286, 50 S. E. 416.

The defendants Edwards and Corbin also complain of the action of the trial court in giving, as amended by the court, Instruction No. 11, offered by the plaintiff. This instruction told the jury that if negligence of each of the defendants, which was the proximate cause of the collision, was established by the evidence, no one of the defendants could escape liability by showing the negligence of the other defendants. Though somewhat abstract in form, the instruction merely told the jury that if all the defendants were guilty of negligence which proximately caused the injury complained of, none of them could be exonerated of his negligence by showing the negligence of the others and in so informing the jury it correctly stated the law. See *Fawcett* v. *Pittsburgh, Cincinnati and Saint Louis Railway Company,* 24 W. Va.

755; *Lynchburg Telephone Company* v. *Booker,* 103 Va. 594, 50 S. E. 148; *Richmond Coca-Cola Bottling Works* v. *Andrews,* 173 Va. 240, 3 S. E. 2d 419; *Yonker* v. *Williams,* 169 Va. 294, 192 S. E. 753; *Price* v. *Burton,* 155 Va. 229, 154 S. E. 499. An abstract instruction is not favored but the action of a court in giving such an instruction is not necessarily reversible error. *Underwood* v. *Goff,* 131 W. Va. 662, 49 S. E. 2d 860. The defendants Edwards and Corbin also contend that it is a binding instruction which ignores their defense of contributory negligence of plaintiff's intestate and that neither the defendants Edwards and Corbin nor the defendant Simmons relied on the negligence of the other or others as a defense against the claim of the plaintiff. Neither contention is well founded. The instruction is not a binding instruction and the question whether negligence of plaintiff's intestate proximately caused or contributed to his fatal injuries was submitted to the jury under proper instructions offered respectively by the defendants Edwards and Corbin and the defendant Simmons. That the defendants Edwards and Corbin relied upon the negligence of the defendant Simmons as the sole proximate cause of the injury in defense of the claim of the plaintiff is shown by Instruction No. 10 to that effect, offered by them and, as amended, given by the trial court; and that the defendant Simmons relied upon the negligence of the defendants Edwards and Corbin as the sole proximate cause of the injury in defense of the claim of the plaintiff is likewise shown by Instruction No. 25 to that effect, offered by him and, as amended, also given by the trial court. The action of the trial court in giving the instruction, as amended, though not favored because abstract in form, did not constitute reversible error.

The fifth and final assignment of error of the defendants Edwards and Corbin is that the evidence does not show that the defendant Corbin, in placing and leaving the truck where it was at the time of the collision, was acting within the scope of his employment as the agent of the defendant Edwards and for that reason the defend-

ant Edwards can not be held liable for the conduct of the defendant Corbin in so placing and leaving the truck. The defendant Corbin, as a witness in behalf of himself and the defendant Edwards, testified that on September 1, 1951, and for more than a year before that date, he was employed by the defendant Edwards to work at his mill and to drive the truck involved in the collision and at least one other truck in hauling timber and coal for his employer; that when he finished work for the day on September 1, 1951, he purchased gasoline for the truck and charged the cost of the gasoline to the account of his employer; that after the gasoline was placed in the tank he drove the truck to his home with the intention of keeping it there until he should drive to work on the following Monday morning, which was the next regular work day after Saturday, September 1, 1951; that during the time that he had worked for his employer, with his knowledge and consent, he had driven whichever truck he had used during his day's work from such work to his home for the purpose of having it to take him to his work on the following day; that he had used the truck involved in the collision in that manner and, on numerous prior occasions, had placed it in substantially the same location in which he placed and left it on the night of the collision; and that his employer knew of this practice upon the part of his employee. All this testimony is undisputed and it sufficiently shows that in using the truck in the manner indicated the defendant Corbin, as the agent of his employer, the defendant Edwards, was acting to further and facilitate the better execution of his work of driving the truck of his employer in going to and returning from the work which he was employed to perform. In so doing he was acting within the scope of his employment. "Generally, where a servant has permission to use a car in order to better execute his business to go to and from his meals and home, he is acting within the scope of his employment." *Meyn* v. *Dulaney-Miller Auto Company*, 118 W. Va. 545, 191 S. E. 558. In *Goff* v. *Clarksburg Dairy Company*, 86 W. Va. 237, 103 S. E. 58, the plaintiff, a boy of eight or nine years of age was injured,

on a street in the city of Clarksburg, by a motor truck belonging to the defendant and driven by one of its employees while the employee was riding from lunch to the place of business of the defendant pursuant to his usual custom and with the knowledge and the consent of his employer. In that case this Court held in point 1 of the syllabus that "A jury may properly find that an injury negligently inflicted upon a person by a motor truck driven by a servant of its owner, while returning from his luncheon agreeably to his usual custom and practice assented to by the master, was a result or an incident of an act done by the servant within the scope of his employment, for which the master is liable." The opinion in the *Goff* case also contains these statements: "By the great weight of authority, the relation of master and servant was not so clearly excluded by the circumstances disclosed here, that a jury could not find and affirm its existence. *Reynolds* v. *Denholm,* 213 Mass. 576; *Bourne* v. *Whitman,* 209 Mass. 155. The defendant's consent to the use made of the truck is a large element in the case. When that appears, the jury, if not the court, may say the relation existed. *Steffen* v. *McNaughton,* (Wis.) 124 N. W. 1016, 26 L. R. A. (N. S.) 382. It is a circumstance tending to prove the use permitted was within the informal contract of employment." Under the evidence in the case at bar the jury, by its verdict, has found that the defendant Corbin, having the right by the consent of his employer to use the truck in going to and returning from the work which he was employed to perform, in placing the truck where he placed and left it until the collision occurred, was acting within the scope of his employment; and that finding of the jury will not be disturbed by this Court.

The verdict of the jury against the defendants Edwards and Corbin is amply supported by the evidence; and during the trial of this case the circuit court committed no prejudicial error of law. In consequence the verdict of the jury will not be set aside by this Court. "When a case has been tried and the questions of fact arising in it have been submitted to a jury and a verdict has been

fairly rendered, and the trial court has committed no error of law, this Court will not disturb the verdict unless manifest wrong or injury has been done or it clearly appears that the verdict is contrary to the weight of the evidence or that it is without any evidence to support it." Point 11, syllabus, *Thrasher* v. *Amere Gas Utilities. Company,* 138 W. Va. 166, 75 S. E. 2d 376.

The final judgment of the Circuit Court of Marion County is affirmed.

*Affirmed.*